**Delores DORADOR, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 87–222.**

Supreme Court of Wyoming.

Feb. 13, 1989.

Leonard D. Munker, State Public Defender (argued), and Julie D. Naylor, Appellate Counsel, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., and David K. Gruver, Asst. Atty. Gen. (argued), for appellee.

* Retired June 29, 1988.

Before CARDINE, C.J., and THOMAS, URBIGKIT, and MACY, JJ., and BROWN, J. Retired.*

CARDINE, Chief Justice.

Appellant Delores Dorador was convicted after jury trial of three counts of delivery of heroin and one count of conspiracy to deliver heroin. She was sentenced to a term of three to seven years on each of the four counts, with the sentences for counts two and four to be served concurrently.

Appellant states the issues as follows: "(1) Whether the trial court erred in refusing to sever Count I from Counts II, III and IV.

"(2) Whether the trial court erred in allowing evidence to be presented at trial concerning crimes not charged.

"(3) Whether it was error to refuse to merge Count II with Count IV prior to trial."

We affirm.

## FACTS

Appellant lived in a rented house in Cheyenne, Wyoming. Between May 1986 and January 1987, this house was the focus of undercover narcotics investigations. In the course of these investigations, Eddie Valdez agreed on July 7, 1986, to make a controlled buy at appellant's residence. Valdez went to appellant's house wearing a body mike and carrying marked currency. He was admitted to the residence and found appellant sleeping in her bedroom. He woke her up and asked her "where the dope was." Appellant sold him two balls of heroin for $160. Valdez left the residence and met the sheriff's officers. He handed the officers the drugs and briefly told them what had occurred.

On July 31, 1986, Eddie Valdez made another controlled buy at appellant's residence following essentially the same procedure as the July 7 transaction. When he entered appellant's residence, several people, including appellant and her son Isaac Debaca, were present. Debaca told Valdez

that heroin was available for purchase but it would have to be used on the premises. Valdez responded that he wanted to buy drugs for a friend and not for his own use. Debaca told him to go to the store and pick up a pack of cigarettes and the heroin would be ready when he returned. Valdez did so. When he returned, he consummated the deal with Debaca. Appellant then advised Valdez that he could take the heroin out of the house. Valdez left the residence and once again met with the sheriff's officers. He gave them the drugs and recounted what had transpired.

On the evening of October 18, 1986, Cheyenne police officers arrested Debaca at appellant's residence and seized heroin and drug paraphernalia. Appellant was not among the several people at the house that evening.

On December 30, another informant, Mike Tensley, agreed to make a controlled buy in connection with an investigation initiated by the Cheyenne police department. He met appellant and Debaca at appellant's residence. Appellant informed him that he could buy two balls of heroin for $50 each to use in the house, and that appellant would obtain more heroin the next day that he could purchase. Tensley bought two balls of heroin and simulated its use by squirting the contents of the syringe into a napkin. On the way out of appellant's house, Tensley threw the napkin into a trash can in the kitchen. He returned to appellant's house the next day and made another controlled buy. This time Jonah Sanchez handed Tensley the drugs. Tensley prepared the heroin for injection and managed to inject most of it into the filter of one his cigarettes, which he later gave to the police.

On January 2, 1987, Tensley again went to appellant's house to make another controlled buy. Appellant agreed to sell him six balls of heroin, four to use that day and two more to use when he came back the next day. Debaca prepared four of the balls for injection, and Tensley attempted to simulate an injection by shooting heroin into a vial. Appellant noticed what Tensley was doing and grabbed the vial. Appellant

and Debaca suspected that Tensley might be wearing a transmitter. They asked him to remove his sweater. Rather than risk being searched, Tensley stormed out of the house.

Tensley returned to appellant's house on January 22, 1987, ostensibly to make another heroin purchase. He negotiated the deal with Debaca, who went to a bedroom and returned with the heroin. He began to prepare the drugs for injection. Meanwhile, Cheyenne police were listening to the transaction which was being transmitted by a body mike worn by Tensley. Upon Tensley's verbal signal, the police stormed into the house. They restrained Debaca and Sanchez and then entered the bedroom where they found appellant, Delma Lozano, and Eugene Ramirez. Appellant and Lozano appeared to be kicking something under the bed as if to hide it. When they looked under the bed, the policemen found a gold bowl and several balls of heroin.

Appellant was arrested and charged with delivering heroin in count I on July 7; count II on December 30; and count III on January 2. She was also charged in count IV with conspiring on or about December 30 to deliver heroin. Prior to trial, appellant filed a motion to sever count I from the remaining counts, a motion in limine to exclude evidence regarding delivery of drugs on dates other than those charged in the information, and a motion to merge counts II and IV on double jeopardy grounds. The trial court denied the motions for severance and merger and reserved ruling on the motion in limine. During the trial, evidence relating to the events of July 31, October 18, December 31, and January 22 was admitted over appellant's objection. Appellant was convicted on all four counts.

## PREJUDICIAL JOINDER

■ Appellant argues that she was prejudiced by the joinder for trial of count I with counts II, III, and IV. Joinder of offenses is addressed in Rule 11(a), W.R. Cr.P., which provides:

"Two (2) or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction, or on two (2) or more acts or transactions connected together or constituting part of a common scheme or plan."

The initial joinder of all of the counts charged in this case was unquestionably permissible under Rule 11. At the very least, all the offenses were of the same or similar character. Appellant does not argue that the offenses were improperly joined, but rather that she was prejudiced by their joinder.

Rule 13, W.R.Cr.P., provides in relevant part:

"If it appears that a defendant or the State is prejudiced by a joinder of offenses or of defendants in an indictment or information, or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires."

We have observed that there is always a possibility of prejudicial joinder, and care must be taken at the initial stage of proceedings to guard against possible prejudice. *Dobbins v. State,* 483 P.2d 255 (Wyo. 1971); *Tabor v. State,* 616 P.2d 1282 (Wyo. 1980). In ruling on a motion to sever, the court must weigh the prejudice caused by joinder against the economy and expedition in judicial administration provided by joinder. *Lee v. State,* 653 P.2d 1388 (Wyo. 1982). In determining whether prejudice exists, two considerations are important. The first is whether the evidence relating to the similar offenses charged would be admissible in a separate trial of each offense. *Tabor,* 616 P.2d at 1284. If the evidence would be admissible, there is no prejudice. If the evidence would not be admissible in separate trials, the trial court should then determine whether the evidence of each crime is "simple and distinct." *Drew v. United States,* 331 F.2d 85, 91 (D.C.Cir.1964). Stated differently, the second consideration is whether the evidence relating to the separate offenses would be so complicated that the jury could not reasonably be expected to separate them and evaluate the evidence properly and individually on each separate charge. *Pote v. State,* 695 P.2d 617 (Wyo.1985).

Applying this test to the present case, even if we assume, without deciding, that the evidence of count I would be inadmissible in a separate trial on the other counts or vice versa, we conclude that appellant has not satisfied the second requirement by showing the evidence of separate offenses to be so complicated that the jury could not separate and evaluate them. Appellant contends that the evidence was confusing because there was testimony of different informants concerning various dates. However, at trial each witness' testimony concerning the separate transactions proceeded in chronological order. The issues before the jury were relatively simple: whether appellant delivered heroin on July 7, December 30, and January 2, and whether she engaged in a conspiracy to deliver heroin on or about December 30. In closing argument the prosecutor reviewed the evidence and explained the date or dates to which it related. The jury was given the following instruction:

"YOU ARE INSTRUCTED that it is your duty to give separate consideration to each individual count and apply the instructions to each individual count and analyze what the evidence in the trial shows with respect to each count."

We conclude that the trial court did not err in refusing to sever the counts. In appellant's brief, selected quotations from the instructions are presented in support of an argument that the instructions, when read as a whole, were confusing to the jury. No objection to the cited instructions was made at trial, and any error was waived by failure to timely object. Rule 51, W.R.C.P.; *Story v. State,* 721 P.2d 1020, 1045, 65 A.L.R.4th 1011 (Wyo.1986).

## ADMISSIBILITY OF EVIDENCE

■ Appellant objected to the introduction of evidence relating to drug transac-

tions occurring at her residence on dates other than those charged in the information. She argues that this was evidence of her character which was relevant only to show that it was more likely she committed the charged crimes, and therefore prohibited by Rule 404(b), W.R.E., which states:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

The contested evidence dealt with drug buys from co-conspirators, the arrest of a co-conspirator, the arrest of appellant, and physical evidence found on the premises. The record shows that the trial court admitted the evidence for the purpose of allowing the State to prove the elements of the conspiracy charge. If the evidence is relevant to prove an element of a crime charged, the pertinent question is how much evidence should be admitted, not whether the evidence tended to show a criminal propensity of defendant. *United States v. Marino*, 617 F.2d 76 (5th Cir. 1980), *reh. denied* 620 F.2d 300, *cert. denied* 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed. 2d 474 (1980). We have previously said that an element of conspiracy may be established by circumstantial evidence, including inferences drawn from the course of conduct of alleged co-conspirators. *Burke v. State*, 746 P.2d 852, 855 (Wyo. 1987). The contested evidence was relevant to show the course of conduct of co-conspirators and, therefore, was not precluded by Rule 404(b).

Appellant also argues that the evidence should have been excluded under Rule 403, W.R.E. We cannot agree. Although the possibility of prejudice existed, the disputed evidence carried significant probative value concerning the existence of the

charged conspiracy. We cannot say that the trial court clearly abused its discretion and, therefore, affirm its ruling.

## MERGER

■ Finally, appellant contends that the double jeopardy clauses of the United States and Wyoming constitutions were violated by the court's refusal to merge for sentencing the December 30 delivery charge and the conspiracy charge.[1] We disagree.

Our analysis of double jeopardy issues is set forth in *Schultz v. State*, 751 P.2d 367, 369 (Wyo.1988):

"[D]ouble-jeopardy prohibitions are only offended when a single trial results in one defendant receiving multiple penalties not authorized by the legislature. "Our task in these cases then is to determine two aspects of legislative intent: First, we determine the offense which the legislature proscribes in each relevant statute or provision. Second, we determine what punishment(s) the legislature metes out for the offense each statute or provision proscribes." (citation and footnote omitted)

The controlled substances conspiracy statute, W.S. 35-7-1042, proscribes agreement to deliver a controlled substance. In contrast, W.S. 35-7-1031 proscribes the actual delivery of a controlled substance. The two statutes are directed at separate evils. The delivery statute targets the delivery of drugs while the conspiracy statute is directed at prevention of partnerships in crime. It is widely recognized that "collective criminal agreement—partnership in crime—presents a greater potential threat to the public than individual delicts." *Callanan v. United States*, 364 U.S. 587, 593, 81 S.Ct. 321, 325, 5 L.Ed.2d 312 (1961).

We have previously recognized federal case law as persuasive when considering W.S. 35-7-1042, which was derived from 21

1. We note that the court imposed concurrent sentences for these two convictions. Appellee does not argue that the concurrent-sentence doctrine should apply, and we will not examine that doctrine in this opinion. For discussion of the concurrent-sentence doctrine in the conspiracy context, see P. Marcus, Prosecution and Defense of Criminal Conspiracy Cases § 7.04[4] (1988).

U.S.C. § 846. *Apodaca v. State*, 627 P.2d 1023, 1027 (Wyo.1981). Federal courts have consistently held that separate sentences for a conspiracy conviction under 21 U.S.C. § 846 and for conviction of the substantive offense which is the object of the conspiracy are constitutionally permissible. See, e.g., *Curtis v. United States*, 546 F.2d 1188 (5th Cir.1977); *United States v. Wylie*, 625 F.2d 1371 (9th Cir.1980). There was no double jeopardy violation in this case. The trial court did not err in refusing to merge the two counts.

AFFIRMED.