2003 WY 136

**Anthony M. ABEYTA, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 02–143.

Supreme Court of Wyoming.

Oct. 28, 2003.

⚷343

Representing Appellant: Kenneth M. Koski, Public Defender; and Donna D. Domonkos, Appellate Counsel.

Representing Appellee: Hoke MacMillan, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Theodore E. Lauer, Director, Prosecution Assistance Program; and Heather Roth, Student Intern.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

VOIGT, Justice.

[¶ 1] Anthony Abeyta (Abeyta) appeals from his conviction of a fourth offense of battery on a household member in violation of Wyo. Stat. Ann. § 6–2–501(b) and (f)(ii) (LexisNexis 2003), a felony. The district court sentenced Abeyta to a term of not less than 657 or more than 730 days in the custody of the Wyoming Department of Corrections, with credit against the minimum and maximum sentence for 141 days in presentence confinement. We affirm the conviction, but vacate the sentence and remand to the district court for a new sentencing hearing.

## ISSUES

[¶ 2]   The issues presented by the parties are as follows:

1.   Whether the prosecutor committed misconduct when he elicited from a witness a comment on the right to remain silent and comments which usurped the jury's function.

2.   Whether the State failed to prove Abeyta had prior domestic violence convictions necessary to convict him of a felony in this case.

We choose to address an additional, fundamental issue:

3.   Whether Abeyta's absence from the sentencing proceeding violated W.R.Cr.P. 43.

## FACTS

[¶ 3]   On November 16, 2001, Abeyta was charged with battery against a household member.[1]   An Information filed November 28, 2001, alleged that Abeyta had previously been convicted of battery against a household member on two or more occasions in violation of Wyo. Stat. Ann. § 6–2–501(f)(ii), enhancing the potential punishment to that for a felony.

[¶ 4]   According to Shirley Gonzales (Gonzales), she and Abeyta began dating in September 2001.   Abeyta lived with his mother while he dated Gonzales, but spent three or four nights a week at Gonzales' apartment. Gonzales testified that Abeyta abused her on two separate occasions, but he was only charged with the incident that occurred on November 14, 2001.   Gonzales testified that the first time Abeyta abused her, around November 7, 2001, he pushed her into the bathtub, hit her with the shower curtain rod, and smashed her finger with the toilet seat

when she tried to get up.   Gonzales testified that she slept in her bedroom closet that night because she feared Abeyta might hurt her again.

[¶ 5]   On November 14, 2001, Gonzales agreed to meet Abeyta at a local bar.   Gonzales arrived at approximately 7:20 p.m., but she and Abeyta left soon afterwards and went their separate ways.   Gonzales returned to her apartment and then left when she realized Abeyta was there.   Gonzales went to a fast food restaurant and ate, went to a park and meditated, and then returned to her apartment to find Abeyta in the kitchen cooking.   Gonzales changed her clothes and began reading her Bible in the bedroom.

[¶ 6]   Gonzales testified that Abeyta then entered the bedroom and started throwing food at her and accused her of sleeping with his brother.   Abeyta continued to enter and leave the bedroom, and Gonzales finally turned out the light and tried to go to sleep. Abeyta turned on the light, Gonzales left the bedroom, and Abeyta followed her.   Gonzales asked Abeyta to return the apartment key she had given him, at which point Abeyta again accused Gonzales of cheating on him. Gonzales claims that Abeyta then threw a medium-sized candle at her that missed her, but left a hole in the wall.

[¶ 7]   Gonzales testified that she then ran into the bedroom to phone for help and Abeyta followed her.   According to Gonzales, Abeyta pulled her hair, pushed her onto the bed, and tore the telephone cord out of the wall.   Gonzales claims she screamed for her neighbor to help her, and Abeyta then struck her in the mouth causing her hearing aid to fall out and her glasses to fall off.   Gonzales stated she ran into the kitchen and began pounding on the common wall to alert her neighbor that she needed help.[2]   Abeyta al-

---

1.   Wyo. Stat. Ann. § 35–21–102(a)(iv) (LexisNexis 2001) provides:

"Household member" includes:
  (A) Persons married to each other;
  (B) Persons living with each other as if married;
  (C) Persons formerly married to each other;
  (D) Persons formerly living with each other as if married;
  (E) Parents and their adult children;
  (F) Other adults sharing common living quarters;

  (G) Persons who are the parents of a child but who are not living with each other;  and
  (H) Persons who are in, or have been in, a dating relationship.

2.   After the first abuse incident, Gonzales' neighbor suggested that if she were in need of help to bang on a common wall three or four times and he would phone for help.

legedly grabbed Gonzales and pulled her hair. Gonzales tried to reach the telephone in the living room, but she testified that Abeyta pulled the cord from the telephone. Gonzales claims she ran into the bedroom and Abeyta followed. Abeyta put his hand over Gonzales' mouth to keep her from screaming for her neighbor. Gonzales stated that she decided to lie quietly and wait for Abeyta to leave. After he left, Gonzales ran to her neighbor and asked him to call the police, which he had already done. Gonzales curled up into a fetal position next to her neighbor's door and waited for police to arrive. The police subsequently apprehended Abeyta approximately five blocks from Gonzales' apartment.

[¶ 8] A jury found Abeyta guilty of battery and made a special finding that he and Gonzales were household members. At Abeyta's request, the district court sentenced him in absentia and this appeal followed.

### DISCUSSION

#### RIGHT TO REMAIN SILENT

[¶ 9] Abeyta argues that at trial, during direct examination of Police Officer DaFoe, the prosecutor elicited an improper comment regarding Abeyta's silence at the detention center while he was being informed of the charges against him. Officer DaFoe testified that he was filling out forms in Abeyta's presence when Abeyta asked him why he had been arrested. During examination of Officer DaFoe, the following exchange occurred:

[PROSECUTOR:] So as you were filling this out I take it is when he asked the question, what am I arrested for?

[OFFICER:] Correct.

[PROSECUTOR:] You advised him what?

[OFFICER:] Family violence assault.

[PROSECUTOR:] Any response?

[OFFICER:] He didn't respond at all. As a matter of fact, he changed the subject and started talking to Officer Wood again.

3. Wyo. Const. art. 1, § 11 states, "[n]o person shall be compelled to testify against himself in

[¶ 10] In the instant case, defense counsel did not object to these alleged comments at trial, and therefore on appeal, we apply the plain error standard. Accordingly, Abeyta must show that the record clearly reflects an error that transgressed a clear and unequivocal rule of law and that such error materially prejudiced a substantial right. *Dysthe v. State*, 2003 WY 20, ¶ 23, 63 P.3d 875, 884 (Wyo.2003) (*quoting Mazurek v. State*, 10 P.3d 531, 535 (Wyo.2000)).

[¶ 11] Abeyta argues in his appellate brief that this questioning "was an obvious attempt by the prosecutor to elicit testimony suggesting ... Abeyta's silence was proof of guilt." Citing *Tortolito v. State*, 901 P.2d 387 (Wyo.1995), Abeyta contends that the prosecutor's conduct was improper and his conviction must be reversed. In *Tortolito*, 901 P.2d at 390, we stated that pursuant to Wyo. Const. art. 1, § 11,[3] an individual's "constitutional right to silence exists at all times—before arrest, at arrest, and after arrest; before a *Miranda* warning and after it. The right is self-executing." We further concluded that:

Prosecutorial violations are subject to the *Clenin [v. State*, 573 P.2d 844 (Wyo. 1978) ] rule's mandate that failure to respect the constitutional right of the citizen-accused not to have his silence called to the jury's attention will entitle the accused to a reversal of conviction. *Westmark v. State*, 693 P.2d 220, 221–22 (Wyo.1984), *citing Clenin*. A reference to silence which is not a "comment" will not be reversed absent a showing of prejudice. *Parkhurst v. State*, 628 P.2d 1369, 1382 (Wyo.1981).

. . .

A comment upon an accused's silence occurs when used to the state's advantage either as substantive evidence of guilt or to suggest to the jury that the silence was an admission of guilt.

*Tortolito*, 901 P.2d at 390–91.

[¶ 12] In right-to-silence cases, we evaluate " 'the entire context in which the statements were made' and we will 'not take

any criminal case...."

sentences and phrases out of context.' " *Spinner v. State*, 2003 WY 106, ¶ 19, 75 P.3d 1016, 1024 (Wyo.2003) (*quoting Robinson v. State*, 11 P.3d 361, 373 (Wyo.2000), *cert. denied*, 532 U.S. 980, 121 S.Ct. 1620, 149 L.Ed.2d 483 (2001)). We also consider " 'whether the prosecutor asked improper questions, whether he emphasized or followed up on the silence issue, and whether he attempted to exploit the issue in any way.' " *Spinner*, 2003 WY 106, ¶ 19, 75 P.3d at 1024 (*quoting Lancaster v. State*, 2002 WY 45, ¶ 39, 43 P.3d 80, 96 (Wyo.2002)).

[¶ 13] In *Tortolito*, the victim and a bus driver told police that Tortolito had committed a robbery. Following these accusations, officers detained and interrogated Tortolito. Tortolito "remained silent" in the face of the accusations. *Tortolito*, 901 P.2d at 388. In direct examination of the officers, the prosecutor elicited numerous statements about Tortolito's failure to respond to the allegations, and in closing argument, the prosecutor characterized Tortolito's silence as an admission of guilt, which we found to be reversible error. *Tortolito*, 901 P.2d at 390–91. Unlike the prosecutor in *Tortolito*, the prosecutor in the instant case did not emphasize or follow up on the silence issue.

[¶ 14] We find the instant case more analogous to *Lancaster*, where an officer testified on direct examination that, when he began to ask Lancaster questions, "he ignored me or at least I felt he ignored me. He didn't respond to me at all." *Lancaster*, 2002 WY 45, ¶ 33, 43 P.3d at 94. In *Lancaster* we found that, "unlike in *Tortolito*, the prosecutor did not mention in opening or argue in closing that the appellant's silence somehow proved guilt." *Id.*, 2002 WY 45, ¶ 37, 43 P.3d at 96. We concluded that:

> A prosecutor does not "comment" on a defendant's exercise of his right to silence where he does not attempt to use the silence to the state's advantage, where he does not argue to the jury that the silence was evidence of guilt or an admission of guilt, and where the defendant does not show any prejudice. *Shipman [v. State]*, 2001 WY 11 ¶ 24, 17 P.3d [34] at 39 [(Wyo. 2001)]. Material prejudice is shown only where there is a reasonable possibility that

the verdict would have been more favorable to the defendant if the evidence or prosecutorial comment had not been allowed. *Emerson [v. State]*, 988 P.2d [518] at 522 [(Wyo.1999)].

*Lancaster*, 2002 WY 45, ¶ 39, 43 P.3d at 96.

[¶ 15] In the instant case, the prosecutor asked only one question concerning whether Abeyta responded when told why he had been arrested. The prosecutor did not attempt to use Abeyta's silence to the State's advantage and did not argue to the jury that Abeyta's silence was evidence of or an admission of guilt. In addition, Abeyta does not attempt to show that he was materially prejudiced from the question and response. We conclude that Abeyta has failed to demonstrate any error that transgressed a clear and unequivocal rule of law that adversely affected a substantial right.

### JURY FUNCTION USURPED

[¶ 16] Abeyta next claims that the prosecutor elicited comments from Officer Alpizar that usurped the jury's function of determining his guilt or innocence. Abeyta contends that Officer Alpizar testified that he had reasonable suspicion to stop Abeyta because of Abeyta's actions and expressed the opinion that innocent people do not run from police. Abeyta argues that such testimony suggested he was guilty because he ran from Officer Alpizar.

[¶ 17] Officer Alpizar testified that he was on patrol driving east on Lincolnway, at about the 2200 block, when he received a radio call to locate an Hispanic male wearing a white t-shirt and blue jeans. The suspect had left a crime scene somewhere in the 2500 block of East Ninth. The officer saw a man matching this description running across Lincolnway and followed him. As soon as the man saw the police car, he ran away.

[¶ 18] On direct examination of the officer, the following dialogue took place:

[PROSECUTOR:] You said he tried to hide from you. How did he do that?

[OFFICER:] He turned his head and saw the patrol vehicle. At that time rather than stopping he continued to run and went around, if I may, around the wall and

hid behind the wall by the entrance at Taco Bell.

[PROSECUTOR:] What did you do?

[OFFICER:] I stopped the vehicle as soon as I had visual of this person. I got out of the patrol vehicle and I said, Police, stop. I then said, Please come out, I need to have a word with you. The gentlemen looked out, saw me, but he refused to move. Once again I said, I need to have a word with you. At that time by then I had enough probable cause—I'm sorry—I had enough reasonable suspicion to believe that this person may be the person that the attempt to locate was referring to on the radio.

[PROSECUTOR:] What made you draw that conclusion I guess? Why?

[OFFICER:] I drew my conclusion based not only on his appearance, which matched the description on the attempt to locate, but his actions. Any other person wouldn't have run from the police. They would have stopped. Most people are very helpful. They tend to want to stop and talk to police officers and find out if there is anything they can do to assist. Rather this person [ran] away from the police vehicle at first. Then once I verbalized my command, he refused to comply.

[¶ 19] Abeyta concedes that this line of questioning was not necessarily improper had the officer merely stated that Abeyta's actions made him believe they found the right person. However, he contends that the officer's recitation of how to view the evidence was improper.

■ [¶ 20] Since defense counsel did not object to this line of questioning at trial, we again apply the plain error standard. Abeyta asserts in his appellate brief that plain error has been proved because the "record is clear that the prosecutor elicited improper opinion testimony that … Abeyta must be guilty because of his actions…. Abeyta has been prejudiced by both [of] the comment[s] because it is the jury's function to determine if … Abeyta is guilty. Plain error has been proven."

[¶ 21] To support his assertion, Abeyta relies on *Lancaster*, 2002 WY 45, ¶ 48, 43

P.3d at 99 (quoting Huff v. State, 992 P.2d 1071, 1079 (Wyo.1999)):

> "This Court has consistently recognized that it is the jury's duty to resolve the factual issues, judge the credibility of the witnesses, and determine the guilt or innocence of a criminal defendant…."

> … "Like opinions as to guilt, opinions as to the veracity, or lack thereof, of the victim or defendant are fundamentally objectionable if those opinions have the capacity to decide the case *for* the jury." Curl [v. State], 898 P.2d [369] at 374 [(Wyo.1995)] (emphasis in original).

*See also Bennett v. State,* 794 P.2d 879, 882–83 (Wyo.1990) and *Stephens v. State,* 774 P.2d 60, 66–67 (Wyo.1989) (where this Court condemned eliciting opinion testimony).

■ [¶ 22] We presume prejudice when the prosecutor elicits an express opinion as to the guilt of the defendant. Taylor v. State, 2001 WY 13, ¶ 21, 17 P.3d 715, 722 (Wyo.2001). In the instant case, the prosecutor did not elicit an express opinion as to Abeyta's guilt. He asked the officer why he had concluded that he had reasonable suspicion to believe that Abeyta was the person to whom the attempt-to-locate call was referring. The officer did not directly express an opinion that "innocent people do not run." Instead, the officer testified that his decision to stop Abeyta was based on Abeyta's appearance and actions. The officer's testimony explained his decision to apprehend the suspect and was not a direct comment on Abeyta's guilt or innocence. We conclude that Abeyta has not met his burden of establishing plain error because he has not demonstrated that a clear and unequivocal rule of law was violated or that any substantial right was prejudiced thereby. Nevertheless, we caution prosecutors that questioning along these lines is fraught with danger and should be avoided unless directed at a particular fact at issue. Poorly disguised questions aimed at eliciting opinions as to guilt are no more acceptable than direct questions posed for the same purpose.

### WAIVER OF RIGHTS

[¶ 23] Abeyta attempted to waive not only a pre-sentence investigation (PSI) report, but also attempted to waive his right to be present at sentencing. On the day of sentencing, Abeyta's counsel filed a document entitled "Defendant's Waiver of PSI and Right to be Present at Sentencing." However, a person charged with a felony in Wyoming may not waive the PSI report; at most, with the parties' consent, a court may permit the report to be filed after sentencing. W.R.Cr.P. 32(a)(1); *Reyna v. State,* 2001 WY 105, ¶ 16, 33 P.3d 1129, 1134 (Wyo.2001) (PSI cannot be waived by plea agreement for any felony).

[¶ 24] In addition, a defendant in a felony case "shall" be present "at the imposition of sentence...." W.R.Cr.P. 43 provides:

(a) *Presence required.*—The defendant shall be present at the initial appearance at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule.

(b) *Continued presence not required.*— The further progress of the trial to and including the return of the verdict shall not be prevented and the defendant shall be considered to have waived the right to be present whenever a defendant, initially present:

(1) Is voluntarily absent after the trial has commenced (whether or not the defendant has been informed by the court of the obligation to remain during the trial); or

(2) After being warned by the court that disruptive conduct will cause the removal of the defendant from the courtroom, persists in conduct which is such as to justify exclusion from the courtroom.

(c) *Presence not required.*—A defendant need not be present in the following situations:

(1) A corporation may appear by counsel for all purposes;

(2) In prosecutions for offenses punishable by fine or by imprisonment for not more than one year or both, the court, with the written consent of the defendant, may permit arraignment, plea, trial, and imposition of sentence in the defendant's absence;

(3) At a conference or argument upon a question of law; and

(4) At a reduction of sentence under Rule 35.

*See also* Wyo. Stat. Ann. § 7–11–202 (Lexis-Nexis 2003).[4] The rule generally incorporates the constitutional guarantees associated with a defendant's "right to be present during every stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the proceeding." *Seeley v. State,* 959 P.2d 170, 177 (Wyo.1998).

[¶ 25] None of the rule's listed exceptions, including those implicating a defendant's waiver of his presence at sentencing, apply to the circumstances of the instant case. Subsection (b) only applies to trial proceedings "to and including the return of the verdict...." Subsection (c)(2) specifically applies to misdemeanor cases, evincing an intent that subsection (a) is mandatory regarding a defendant's presence at sentencing in a felony case. *See, for example, United States v. Songer,* 842 F.2d 240, 243–44 (10th Cir.1988) and *State v. Koopmans,* 210 Wis.2d 670, 563 N.W.2d 528, 532–33 (1997). Accordingly, we will vacate Abeyta's sentence and remand to the district court for resentencing. *See Songer,* 842 F.2d at 244 and *Koopmans,*

---

**4.** Wyo. Stat. Ann. § 7–11–202 provides:

Except as otherwise provided by this section, the defendant shall be present at the arraignment, at every stage of the trial, including the impaneling of the jury, and the return of the verdict and at the imposition of sentence. In prosecution for offenses not punishable by death, the defendant's voluntary absence after the trial has been commenced in his presence shall not prevent continuing the trial to and including the return of the verdict. A corporation may appear by counsel for all purposes. In prosecutions of all misdemeanor cases, the court, with the written consent of the defendant, may permit arraignment, plea, and imposition of sentence in a defendant's absence. The defendant's presence is not required at a reduction of sentence hearing.

563 N.W.2d at 533. We find federal authority persuasive in concluding that W.R.Cr.P. 43 "vindicates a central principle of the criminal justice system" concerning a defendant's presence at sentencing in a felony case; a violation of that particular principle is *"per se* prejudicial" and the "presence or absence of prejudice is not a factor in judging the violation." *United States v. Torres–Palma,* 290 F.3d 1244, 1248 (10th Cir.2002).

### PRIOR CONVICTIONS

 [¶ 26] Abeyta argues that the State failed to provide any proof that he had been previously convicted of battery against a household member as required by Wyo. Stat. Ann. § 6–2–501(f)(ii) to enhance his sentence to a felony. Given our disposition of the waiver issue, we need not reach the merits of this issue. However, we note that where prior convictions are alleged in order to seek enhancement of a sentence, two questions of fact are generally presented. The first is whether a pertinent prior judgment has been rendered, and the second is whether the person named in the prior judgment is the accused presently before the court. *Chavez v. State,* 604 P.2d 1341, 1350 (Wyo.1979), *cert. denied,* 446 U.S. 984, 100 S.Ct. 2967, 64 L.Ed.2d 841 (1980). *See also Singer v. United States,* 278 F. 415, 420 (C.C.A.3), *cert. denied,* 258 U.S. 620, 42 S.Ct. 272, 66 L.Ed. 795 (1922).

[¶ 27] Prior convictions can be established through documentary evidence such as the admission of authenticated copies of prison records, admission of authenticated copies of judgments of conviction and sentence from courts in Wyoming or from courts in other states, by the admission and use of copies of certified prison fingerprint records, or by a defendant's admission of such convictions. *Chavez,* 604 P.2d at 1350; *Waxler v. State,* 67 Wyo. 396, 224 P.2d 514, 521 (1950). Evidence of identity can be in the form of admission or confession of the defendant, photographs, similar birth dates and places, similar social security numbers or other identification numbers, certified fingerprint cards from prior arrests testified to by a fingerprint classifier to be those of the defendant, testimony of a prison official relative to his

records, or by any of the usual methods for determining identity. *Chavez,* 604 P.2d at 1351.

### CONCLUSION

[¶ 28] Abeyta has failed to demonstrate prosecutorial misconduct. His conviction for battery against a household member is affirmed, but we remand to the district court for re-sentencing because Abeyta was not present at the sentencing hearing.