2007 WY 89

**Lonnie LESSARD, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 05–295.**

Supreme Court of Wyoming.

May 24, 2007.

Representing Appellant: P. Craig Silva of Williams, Porter, Day & Neville, P.C., Casper, Wyoming.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Eric A. Johnson, Director, Geoffrey L. Gunnerson, Student Director, and Jenny Staeben, Student Intern, of the Prosecution Assistance Program. Argument by Mr. Gunnerson.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, JJ., and BROOKS, D.J.

GOLDEN, Justice.

[¶ 1] Appellant Lonnie Lessard appeals his convictions for burglary, first degree sexual assault, and attempted first degree sexual assault. He asserts error in the admission of evidence which he claims constituted improper comments on his right to remain silent. Lessard also faults the district court for not severing the criminal charges against him and accuses defense counsel of providing constitutionally ineffective assistance. We affirm.

## ISSUES

[¶ 2] Lessard presents the following issues for our review:

A. The prosecution elicited testimony from two witnesses and admitted a transcribed statement of Lonnie Lessard which commented on Mr. Lessard's right to remain silent and violated his Fifth Amendment rights under the United States Constitution and the Wyoming Constitution, Art. 1, § 11.

B. The trial court abused its discretion when it did not sever the two sexual assault offenses against [SH] and [SG], denying Lonnie Lessard his right to a fair trial.

C. Lonnie Lessard was denied his Sixth Amendment right to effective assistance of counsel by trial counsel's deficient performance in defense of Appellant.

## FACTS

[¶ 3] During the early morning hours of June 9, 2004, Lessard left his residence, driving a light blue Dodge minivan belonging to his girlfriend, Anna Mae Johnson. He drove to the residence of SH[1] and entered her home through a kitchen window. SH was awakened by the sound of the Venetian blinds hitting the window and a loud "thud." SH went to investigate the noise and saw Lessard standing in her kitchen next to the refrigerator. When she asked him why he was in her home, he responded, "I'm going to rape you. I'm going to rape you hard." As she turned to run, Lessard grabbed her around the neck and covered her mouth. He then dragged her down the hallway to the bedroom, removed her clothes, and sexually assaulted her.

[¶ 4] After the assault, Lessard left SH's presence momentarily to use the bathroom. SH seized upon that opportunity and escaped the confines of her home, wearing only a short, flannel-type jacket she found hanging by the front door. Once outside, she ran directly to the home of her neighbor and friend, Helen Markland, who lived across the street. After learning what had happened, Ms. Markland called 911. While talking to the 911 operator, Ms. Markland stepped outside and noticed the minivan Lessard had been driving for the last several months parked by SH's residence.[2] Shortly thereafter, she saw the minivan leave the area. Ms. Markland attempted to follow the van, but lost it a few blocks away.

[¶ 5] Within minutes of the 911 call, deputies from the Laramie County Sheriff's Department arrived at the scene. During the ensuing investigation, the deputies found Lessard's cell phone, which was under some spilled dog food on the kitchen floor, and one of his shoes, which was lying next to SH's bed. They also discovered that the clothing SH was wearing before the assault, as well as an afghan she kept by her bed, were missing. A description of the missing items was relayed to the deputies searching for Lessard.

[¶ 6] In an effort to locate Lessard, Deputies Mark Slovik and Terry Camery went to the residence of SG, Lessard's estranged wife.[3] Upon arrival at SG's residence, Deputies Slovik and Camery found the minivan that Lessard had been driving. The deputies felt the tires and hood of the minivan and discovered they were still warm. They also noticed that the keys were still in the ignition and that there were some clothes in the van.

[¶ 7] The deputies knocked on the door of the residence and Lessard responded, wearing only gray sweatpants. As Lessard described his activities that night, the deputies observed SG shaking her head in the negative to his statements. The deputies asked Lessard to accompany them to the Sheriff's Office for a formal interview. Lessard ultimately agreed to do so, but said he wanted to get dressed before going with them. Lessard, however, could not locate any of his clothing in the residence and eventually told the deputies that his clothes were in the van. Deputy Slovik and Deputy Susan Sports, who had just arrived at the residence, then escorted Lessard to the van to retrieve his clothing.

[¶ 8] While they were outside, SG reported to Deputy Camery that she was awakened by Lessard covering her mouth and pulling her hair. Lessard was naked and demanding that she lay quietly in bed and do as he instructed. According to SG, Lessard told her that he was there to rape her and he

---

**1.** Lessard and SH had known each other for several years and were intimately involved until SH terminated the relationship in July 2002.

**2.** Since 2001, Lessard had been doing maintenance work for Ms. Markland at the mobile

home park she managed and wherein she and SH resided.

**3.** SG and Lessard were divorced in July 2004.

then climbed on top of her. She stated that Lessard had been attempting to force her to perform oral sex on him when the deputies knocked on her door.

[¶ 9] After Lessard returned with his clothes, Deputy Camery confirmed his willingness to accompany the deputies to the Sheriff's Office. As he prepared to go, Lessard stated, "arrest me." When Deputy Camery responded that he was not under arrest and that they merely wanted to speak with him, Lessard stated, "Arrest me, I'm a sex offender." At this point, Deputy Sports informed Deputy Camery that she saw both an afghan and clothes matching those described by SH and a shoe that matched the one collected at SH's residence inside the van. Deputy Camery then placed Lessard under arrest.

[¶ 10] Lessard was later interviewed by Detective Linda Gesell. During that interview, Lessard denied being at SH's house. He also gave conflicting accounts as to his activities that morning and how he obtained possession of SH's afghan and clothes. The interview concluded when Lessard demanded the help of an attorney in obtaining a DNA test.

[¶ 11] The State charged Lessard with five felonies arising out the incidents on June 9: burglary of SH's residence (Count I), a violation of Wyo. Stat. Ann. § 6–3–301(a) (LexisNexis 2005); two counts of first degree sexual assault against SH (Counts II and III), a violation of Wyo. Stat. Ann. § 6–2–302(a)(i) (LexisNexis 2005); attempted first degree sexual assault as to SH (Count IV), a violation of Wyo. Stat. Ann. §§ 6–1–301(a) (LexisNexis 2005) and 6–2–302(a)(i); and attempted first degree sexual assault as to SG (Count V), a violation of Wyo. Stat. Ann. §§ 6–1–301(a) and 6–2–302(a)(i). Prior to trial, Lessard filed several motions, including a motion in limine to exclude evidence of his prior convictions, a motion to sever the sexual assault cases, and two motions to suppress his statements to law enforcement. After hearing, the district court denied the motion to sever and the motions to suppress, but granted in part the motion in limine involving his prior criminal record.

[¶ 12] Lessard's jury trial began on December 7 and concluded on December 9, with a verdict of guilty on Counts I, II, III, and V. Before sentencing, Lessard sought a new trial on the basis of ineffective assistance of trial counsel and newly discovered evidence. After hearing, during which Lessard was represented by new counsel, the district court denied Lessard's new trial motions, concluding that Lessard had not met his burden of proving that the proffered evidence could not have been produced at trial and that trial counsel had provided deficient assistance.

[¶ 13] The district court sentenced Lessard to prison terms of 6 to 10 years on Count I, 12 to 28 years on Counts II and III, and 15 to 30 years on Count V. The district court ordered Counts II and III to run concurrent to each other, but consecutive to Count I, and Count V to run consecutive to Counts II and III. This appeal followed.

## DISCUSSION

### Comments on right to silence

[¶ 14] Lessard points to excerpts from the testimony of two prosecution witnesses, SG and Detective Gesell, and a transcript of his post-arrest statement to Detective Gesell that was introduced at trial, and asserts that they constituted improper comments on his constitutional right to remain silent. Lessard did not object to the alleged improper comments at trial. Therefore, we must review his claim under the plain error standard, which requires Lessard to show in the record an error that transgressed a clear and unequivocal rule of law resulting in material prejudice to a substantial right. *Abeyta v. State*, 2003 WY 136, ¶ 10, 78 P.3d 664, 667 (Wyo.2003); *Spinner v. State*, 2003 WY 106, ¶ 13, 75 P.3d 1016, 1019 (Wyo.2003).

[¶ 15] Art. 1, § 11 of the Wyoming Constitution provides that "[n]o person shall be compelled to testify against himself in any criminal case." In *Tortolito v. State*, 901 P.2d 387, 390 (Wyo.1995), we held that an individual's "constitutional right to silence exists at all times—before arrest, at arrest, and after arrest; before a *Miranda* warning and after it"—and is self-executing. We also

held that a prosecutor's failure to respect the constitutional right of the defendant not to have his silence called to the attention of the jury will result in reversal of the defendant's conviction. *Id.* A "comment" on a defendant's exercise of his right to silence occurs when the prosecutor uses the silence to the state's advantage either as substantive evidence of guilt or to suggest to the jury that the silence was an admission of guilt. *Lancaster v. State*, 2002 WY 45, ¶¶ 39–40, 43 P.3d 80, 96–97 (Wyo.2002); *Shipman v. State*, 2001 WY 11, ¶ 24, 17 P.3d 34, 39 (Wyo.2001).

[¶ 16]   In analyzing right-to-silence claims, we consider the "entire context in which the statements were made" and we will "not take sentences and phrases out of context." *Spinner*, ¶ 19, 75 P.3d at 1024 (quoting *Robinson v. State*, 11 P.3d 361, 373 (Wyo.2000)).   We also consider "whether the prosecutor asked improper questions, whether he emphasized or followed up on the silence issue, and whether he attempted to exploit the issue in any way." *Id.* (quoting *Lancaster*, ¶ 39, 43 P.3d at 96).

[¶ 17]   Lessard first complains about the following exchange during the prosecutor's examination of SG:

[Prosecutor] Were you present when they asked [Lessard] if he was willing to come down and talk with them?

[SG] Yes, I was.

[Prosecutor] Was he agreeable with that?

[SG] No.

[Prosecutor] Did he at some point agree to go?

[SG] No. They asked several times if he would just come down and talk to them.

[¶ 18]   Considering this testimony in proper context, we do not find that it amounts to an improper comment of Lessard's right to silence.   It appears that the prosecutor elicited this testimony to reconstruct Lessard's behavior during his initial encounter with law enforcement at SG's residence.   SG's testimony drew attention only to Lessard's reluctance to leave SG alone with the deputies; it did not indicate that Lessard did not want to talk to the deputies.   In fact, the jury heard testimony indicating Lessard's willingness to talk to the deputies about his whereabouts

and activities that morning.   At no point did the prosecutor attempt to exploit SG's testimony to imply that Lessard was unwilling to talk to the deputies.

[¶ 19]   Lessard next asserts error in the following testimony by Detective Gesell:

[Prosecutor] At any time did [Lessard] make a complaint to you about his physical mobility and inability to climb in and out of a window, for example?

[Gesell] No.

[Prosecutor] At any time did he make any kind of physical complaint whatsoever, like my back hurts, my necks [sic] hurts, anything like that?

[Gesell] No.

[¶ 20]   Obviously, the prosecutor's inquiry was not an impermissible comment on Lessard's right to silence.   Lessard did not exercise his right to remain silent but, instead, chose to answer the detective's questions concerning the victims' allegations and his activities that morning.   The prosecutor merely asked Detective Gesell if Lessard had mentioned back or neck problems when she informed him that he had been accused of entering SH's residence by climbing through a window.   Detective Gesell's response indicated only that Lessard had not complained of such problems during the entire interview.   The clear intent of the prosecutor's inquiry was to address Lessard's trial defense that back and neck problems made it impossible for him to have climbed through the window at SH's residence.   In drawing attention to this omission, the prosecutor was not suggesting that the jury make the prohibited inference that Lessard remained silent because he was afraid of betraying his guilt.   Rather, the prosecutor suggested only that it would have been natural for Lessard to mention that he had back problems, since they would have prevented him from committing the crime.

[¶ 21]   Lessard   lastly   complains about the admission of the transcript of his post-arrest statement to Detective Gesell that contained a request for counsel.   We disagree that the transcribed statement constituted an improper comment on Lessard's

right to remain silent. The challenged portion focused on Lessard's request to have a DNA test, which he believed would exculpate him in the crimes involving SH. In the statement, Lessard said, "I want it done right now, tonight and right now I want to see an attorney. Because I want to get this done." The context of his request for counsel indicates that Lessard wanted an attorney in an attempt to force Detective Gesell to conduct a DNA test, not to protect his right to silence or hide his guilt. We find nothing in the record indicating the prosecutor used that statement for the prohibited inference of guilt from silence.

[¶ 22] We hold that Lessard has not demonstrated a transgression of a clear and unequivocal rule of law with respect to any of the challenged evidence. The evidence did not constitute an impermissible comment on Lessard's right to remain silent. We find no plain error.

### Denial of motion to sever

[¶ 23] Lessard contends that the district court erred in denying his motion to sever the sexual assault charge involving SG from the sexual assault charges involving SH. He claims the charges were fundamentally different and that the failure to sever them prejudiced his right to a fair trial. We disagree.

[¶ 24] The denial of a motion for severance is generally within the sound discretion of the district court and will not be disturbed on appeal absent a clear abuse of that discretion. *Mitchell v. State,* 982 P.2d 717, 723 (Wyo.1999); *Simmers v. State,* 943 P.2d 1189, 1198 (Wyo.1997). A court does not abuse its discretion unless it acts in a manner that exceeds the bounds of reason under the circumstances. *Bell v. State,* 994 P.2d 947, 955 (Wyo.2000). An abuse of discretion occurs when joinder of separate charges deprived the defendant of a fair trial. *Mitchell,* 982 P.2d at 723; *Black v. State,* 869 P.2d 1137, 1139 (Wyo.1994).

[¶ 25] W.R.Cr.P. 8(a) specifically permits joinder of multiple offenses in a single information or indictment if the offenses charged "are of the same or similar character, are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan." We have stated:

> As a general rule, joinder of offenses is proper absent compelling reasons for severance. *Bell v. State,* 994 P.2d 947, 955 (Wyo.2000) (citing *Bishop v. State,* 687 P.2d 242, 247 (Wyo.1984)). "Joint trials serve the public interest by expediting the administration of justice, reducing docket congestion, conserving judicial time as well as that of jurors along with avoiding the recall of witnesses to duplicate their performances." *[Id.]* (quoting *Jasch v. State,* 563 P.2d 1327, 1335 (Wyo.1977)). Any prejudice caused by the joinder is weighed against the judicial economies created by joinder. *[Id.]* (citing *Dorador v. State,* 768 P.2d 1049, 1052 (Wyo.1989); *Lee v. State,* 653 P.2d 1388 (Wyo.1982)).

*Duke v. State,* 2004 WY 120, ¶ 42, 99 P.3d 928, 945 (Wyo.2004), *cert. denied,* 544 U.S. 1062, 125 S.Ct. 2513, 161 L.Ed.2d 1113 (2005).

[¶ 26] Upon review of the record, we find that the sexual assault offenses were similar in character and so related as to constitute parts of a common scheme or plan. Although the criminal acts occurred at different locations and against different victims, the nature and circumstances surrounding the commission of those offenses were almost identical. Lessard knew both victims. In each instance, Lessard entered the home of the victim under the cover of darkness, told the victim he was there to rape her, subdued her by force and demanded that she perform oral sex upon him. Given the facts in this case, we have no trouble concluding that the offenses were properly joined as permitted by W.R.Cr.P. 8(a).

[¶ 27] Lessard argues that, even if the charges were properly joined under W.R.Cr.P. 8(a), separate trials should have been held as to each victim because of the prejudicial risks a single trial posed to him. Lessard insists he was prejudiced by the single trial because of the cumulative nature of the evidence and the jury's inability to separate the evidence in reaching a verdict with respect to each charge.

[¶ 28] W.R.Cr.P. 14 allows the trial court to order separate trials if the defendant is prejudiced by the joinder of offenses. This Court has articulated a two-part test for determining whether joinder prejudiced a defendant:

The first is whether the evidence relating to the similar offenses charged would be admissible in a separate trial of each offense. *Tabor [v. State ]*, 616 P.2d [1282,] 1284 [ (Wyo.1980) ]. If the evidence would be admissible, there is no prejudice. If the evidence would not be admissible in separate trials, the trial court should then determine whether the evidence of each crime is "simple and distinct." *Drew v. United States,* 331 F.2d 85, 91 (D.C.Cir. 1964). Stated differently, the second consideration is whether the evidence relating to the separate offenses would be so complicated that the jury could not reasonably be expected to separate them and evaluate the evidence properly and individually on each separate charge. *Pote v. State,* 695 P.2d 617 (Wyo.1985).

*Duke,* ¶ 43, 99 P.3d at 945 (citing *Dorador v. State,* 768 P.2d 1049, 1052 (Wyo.1989)).

[¶ 29] We agree with the State that the evidence concerning both victims would have been admissible in separate trials under W.R.E. 404(b) to show motive, course of conduct or to show a common plan or scheme. Even if we were to find the evidence inadmissible, the facts of this case were uncomplicated and relatively easy to understand. The district court carefully defined in clear and understandable language each crime charged and the proof required for a finding of guilt. The district court also specifically instructed the jury that it had to give separate consideration to each count, and the evidence pertaining to it, and that its finding on one count was not to control its verdict as to any of the other charged crimes. There is no indication in the record that the jury disregarded the district court's instructions or that it was unable to separate the evidence in support of one crime from the evidence in support of the other charged crimes. In fact, the jury acquitted Lessard on Count IV. Under the circumstances, we cannot conclude that the district court abused its discretion in refusing to sever the criminal charges.

*Ineffective assistance of counsel*

[¶ 30] In his last contention of error, Lessard claims he was denied his Sixth Amendment right to the effective assistance of counsel. In analyzing ineffectiveness claims, we have stated:

When reviewing a claim of ineffective assistance of counsel, the paramount determination is whether, in light of all the circumstances, trial counsel's acts or omissions were outside the wide range of professionally competent assistance. *Herdt v. State,* 891 P.2d 793, 796 (Wyo. 1995); *Starr v. State,* 888 P.2d 1262, 1266–67 (Wyo.1995); *Arner v. State,* 872 P.2d 100, 104 (Wyo.1994); *Frias v. State,* 722 P.2d 135, 145 (Wyo.1986). The reviewing court should indulge a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Herdt,* [891 P.2d] at 796; *Starr,* [888 P.2d] at 1266; *Arner,* [872 P.2d] at 104; *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984).

Under the two-prong standard articulated in *Strickland* and *Frias,* an appellant claiming ineffective assistance of counsel must demonstrate on the record that counsel's performance was deficient and that prejudice resulted. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064; *Starr,* [888 P.2d] at 1266; *King v. State,* 810 P.2d 119, 125 (Wyo.1991) (Cardine, J., dissenting); *Campbell v. State,* 728 P.2d 628, 629 (Wyo.1986); *Frias,* 722 P.2d at 145. In other words, to warrant reversal on a claim of ineffective assistance of counsel, an appellant must demonstrate that his counsel failed to "render such assistance as would have been offered by a reasonably competent attorney" and that "counsel's deficiency prejudiced the defense of the case." *Lower v. State,* 786 P.2d 346, 349 (Wyo.1990). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper func-

tioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686, 104 S.Ct. at 2064.

*Asch [v. State,* 2003 WY 18,] ¶ 11[, 62 P.3d 945, 950 (Wyo.2003) ] (quoting *Becker v. State,* 2002 WY 126, ¶ 12, 53 P.3d 94, [99] (Wyo.2002); *Reyna v. State,* 2001 WY 105, ¶ 19, 33 P.3d 1129, [1134–35] (Wyo.2001); *Chapman v. State,* 2001 WY 25, ¶ 6, 18 P.3d 1164, [1168] (Wyo.2001); *Grainey v. State,* 997 P.2d 1035, 1038–39 (Wyo.2000)). The burden of proving that counsel was ineffective rests entirely on an appellant. [*Id.*] (citing *Barkell v. State,* 2002 WY 153, ¶ 10, 55 P.3d 1239, [1242] (Wyo.2002)). To satisfy his burden, an appellant must provide more than mere speculation or equivocal inferences. *Sincock v. State,* 2003 WY 115, ¶ 37, 76 P.3d 323, [337] (Wyo.2003) (citing *Barkell,* ¶ 13[, 55 P.3d at 1243] ).

*Duke,* ¶ 36, 99 P.3d at 943; *see also Martinez v. State,* 2006 WY 20, ¶ 23, 128 P.3d 652, 662–63 (Wyo.2006).

[¶ 31] Lessard has set forth six claims of alleged ineffectiveness, namely: (1) trial counsel told the jury he was a prior sex offender; (2) trial counsel did not examine all the photos that were part of discovery; (3) trial counsel failed to object to everything he could have at trial; (4) trial counsel failed to timely submit jury instructions and erroneously requested an intoxication instruction; (5) trial counsel did not submit the telephone records of Anna Mae Johnson; and (6) trial counsel and his subsequent counsel at the post-trial motion hearing did not introduce the medical testimony of Dr. Wright.[4]

[¶ 32] Lessard has failed to support his various ineffectiveness claims with a cogent legal analysis. Although he gives a detailed description of the challenged acts and omissions, he fails to explain how counsel's acts or omissions fell below that of a reasonably competent attorney. He presents no argument that counsel's alleged acts or omissions did not represent professionally sound strategy under the circumstances. Lessard's argu-

ment seems to be simply that the case against him was weak and counsel's alleged errors in representation, because of the outcome, were obviously prejudicial. This argument is insufficient to satisfy Lessard's burden of overcoming our strong presumption that counsel rendered adequate assistance. Lessard has not convinced us that his counsel's conduct so undermined the proper functioning of the adversarial process that his trial cannot be relied upon as having produced a just result.

## CONCLUSION

[¶ 33] We affirm Lessard's convictions in all respects.

---

4. Dr. Wright examined Lessard for back problems a little over one month after trial. Although no evidence of that examination was introduced in the proceedings below, a report allegedly produced by the doctor is included in the record on appeal. The report indicates some mild spinal spondylosis in the mid and low back and a more severe spinal spondylosis in his neck.