2007 WY 105

**George Sanchez HERNANDEZ, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 05–297.**

Supreme Court of Wyoming.

July 11, 2007.

Representing Appellant: Kenneth M. Koski, State Public Defender, PDP; Donna D. Domonkos, Appellate Counsel. Argument by Ms. Domonkos.

Representing Appellee: Patrick J. Crank, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Leda M. Pojman, Assistant Attorney General. Argument by Ms. Pojman.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶1] A jury convicted George Sanchez Hernandez of attempted second degree murder for cutting William George Johnson's throat with a knife. On appeal, Mr. Hernandez claims the district court erred when it instructed the jury that use of a deadly weapon raised mandatory presumptions of an intent to kill and malice. He further claims prosecutorial misconduct occurred when the

prosecutor told the jury during closing argument that the presumptions were authorized by Wyoming law. Finally, he claims other errors that occurred during the trial gave rise to cumulative error requiring reversal.

[■] We hold the mandatory presumption instructions were improper and were not harmless beyond a reasonable doubt. In the language of the plain error analysis, the instructions deprived Mr. Hernandez of a substantial right resulting in material prejudice. Therefore, we reverse Mr. Hernandez's conviction.

## ISSUES

[■] Mr. Hernandez states the issues as follows:

*ISSUE I:*

Whether the district court committed reversible error when it instructed the [jury] with two mandatory presumptions.

*ISSUE II:*

Whether prosecutorial misconduct occurred when the prosecutor misstated and misled the jury on the law.

*ISSUE III:*

Whether cumulative error occurred in appellant's trial.

The State phrases the issues as follows:

I. Was appellant prejudiced by Instructions 13 and 17 or the prosecutor's reference to them?

II. Does cumulative error exist in this case?

## FACTS

[¶ 4] On November 3, 2004, Mr. Johnson and Mr. Hernandez were at the home of Wayne and Diana Scheuerman in Worland, Wyoming. Lenna Chapa was also present. Testimony was presented at trial indicating all of those present were drinking alcohol throughout the day and were intoxicated.

[■] Friction arose between Mr. Johnson and Mr. Hernandez because of comments Mr. Hernandez was making about Mr. Johnson's girlfriend, Patty Nelson, who was not present. Two or three times, Mr. Johnson rose from his chair, went over to Mr. Hernandez and "head-butted" him. During one of the altercations, Mr. Johnson fell over and smashed a coffee table. Ms. Scheuerman called the police and requested they come and remove Mr. Johnson from her home. Mr. Scheuerman arrived home at the same time and took Mr. Johnson outside to calm him down. When a police officer arrived, Mr. Scheuerman told him that Mr. Johnson could stay and he would address the issue with his wife.

[¶ 6] After the police officer left, Mr. Scheuerman and Mr. Johnson went back into the house and joined the others in the living room. The testimony presented at trial varied as to what happened next. Ms. Scheuerman testified Mr. Hernandez rose from the couch and approached Mr. Johnson, saying "I'm probably going to the pen, or I probably got a free ticket to the pen." She testified she did not see a knife but the next thing she knew there was blood coming from Mr. Johnson's neck. Mr. Johnson testified Mr. Hernandez approached him, he felt like he had been punched, and then he noticed blood on his hand. He touched his neck and there was more blood. Mr. Scheuerman testified that when he and Mr. Johnson came back into the house Mr. Johnson slapped Mr. Hernandez in the head or kicked him. Then Mr. Johnson sat down and Mr. Hernandez rose, moved toward Mr. Johnson and "tried to hit him with a knife." Mr. Scheuerman testified he did not actually see Mr. Hernandez cut Mr. Johnson's throat, but Mr. Johnson was not bleeding before and blood was dripping from his neck after Mr. Hernandez approached him.

[¶ 7] Ms. Chapa testified she had gone into the kitchen and did not see what happened but saw blood on Mr. Johnson's neck as she and Mr. Hernandez left the residence together. Mr. Scheuerman told Mr. Johnson he needed to get him to the hospital and they left. At the hospital, a doctor performed surgery on Mr. Johnson's neck and carotid artery.

[¶ 8] Emergency room personnel called the police and reported that Mr. Johnson had

been stabbed. Police went to the hospital and spoke with Mr. Johnson who indicated he had been stabbed by a Hispanic man named George at the Scheuerman residence. Police went to the home and spoke with Ms. Scheuerman. They found Mr. Hernandez across the street and arrested him. Later, they found a knife sheath on the floor in the living room next to where witnesses said Mr. Hernandez was sitting and a knife under magazines on a table nearby. Mr. Hernandez was arrested and charged with attempted second degree murder in violation of Wyo. Stat. Ann. §§ 6–1–301 and 6–2–104 (Lexis-Nexis 2005).

A jury trial was convened in district court in Washakie County on July 12, 2005. Mr. Hernandez's defense was that he was too intoxicated to form the specific intent necessary to support a conviction of attempted second degree murder. Prior to submitting the case to the jury for deliberations, the district court instructed the jury on the applicable law. Among the instructions given were an instruction on Mr. Hernandez's intoxication defense and instructions telling the jury that use of a deadly weapon gave rise to presumptions of intent to kill and malice. In its closing argument, the State told the jury the presumptions were authorized by Wyoming law. After deliberating for less than one hour, the jury returned a verdict of guilty against Mr. Hernandez on the charge of attempted second degree murder. The district court sentenced Mr. Hernandez to twenty to twenty-two years in the Wyoming State Penitentiary with credit for 324 days served.

## DISCUSSION

### 1. *Jury Instructions*

[¶ 10] Mr. Hernandez claims plain error occurred when the district court gave the jury the following instructions proposed by the State:

### INSTRUCTION NO. 13

Use of [a]deadly weapon gives rise to [a] presumption of intent to kill.

### INSTRUCTION NO. 17

Use of [a]deadly weapon in a deadly and dangerous manner raises [a] presumption of malice.

Mr. Hernandez asserts these instructions violated his due process rights because they contained mandatory presumptions telling the jury that if it found he used a deadly weapon it *must* find malice and intent, improperly relieving the State of its burden of proving every element of the crime charged. Defense counsel did not object to the proposed jury instructions about which Mr. Hernandez complains. Therefore, the plain error standard applies and Mr. Hernandez must show: 1) the claimed error clearly appears in the record; 2) the error violated a clear and unequivocal rule of law in an obvious way; and 3) he was deprived of a substantial right resulting in material prejudice.

[¶ 11] It is established law in this Court and the United States Supreme Court that the State is required to prove every element of a criminal offense beyond a reasonable doubt, and jury instructions containing any presumption that a reasonable juror may read as mandatory are prohibited. *Krucheck v. State,* 671 P.2d 1222, 1224 (Wyo. 1983); *Sandstrom v. Montana,* 442 U.S. 510, 512, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). In *Sandstrom,* the defendant was charged with deliberate homicide and the jury was instructed that "the law presumes that a person intends the ordinary consequences of his voluntary acts." The Court held the instruction violated the Fourteenth Amendment because the jurors may have interpreted it either as shifting the burden to the defendant to prove he did not intend to kill, or requiring them to find intent upon proof by the State that the defendant caused the victim's death. Because either interpretation would have deprived the defendant of his right to due process, the Court held the instruction was unconstitutional and reversed the conviction.

[¶ 12] In *Krucheck,* this Court was asked to decide whether an instruction nearly identical to Instruction No. 17, the presumption of malice instruction given in Mr. Hernandez's case, was improper. We reversed the defendant's conviction, holding the trial court

erred in giving the instruction without contemporaneously instructing the jury that the State must prove the existence of malice beyond a reasonable doubt. We held the failure to give the contemporaneous instruction violated W.R.E. 303(c) and the Fourteenth Amendment to the United States Constitution. *Krucheck*, 671 P.2d at 1223–24.

[¶ 13] Rule 303(c) provides:

Whenever the existence of a presumed fact against the accused is submitted to the jury, the court shall instruct the jury that it *may* regard the basic facts as sufficient evidence of the presumed fact *but is not required to do so.* In addition, if the presumed fact establishes guilt or is an element of the offense or negatives a defense, the court shall instruct the jury that its existence, on all the evidence, must be proved beyond a reasonable doubt.

(emphasis added). We said in *Krucheck*, 671 P.2d at 1223–24, that the rule required the trial court to explicitly tell the jury that the presumption was permissive, not mandatory, and that the existence of malice had to be proven beyond a reasonable doubt. "The intent of the rule is to tell the jury that they are not bound by the presumption and that it is therefore rebuttable." *Brooks v. State,* 706 P.2d 664, 667–68 (Wyo.1985).

[¶ 14] Citing *Sandstrom*, we also said in *Krucheck*, 671 P.2d at 1224:

[T]he Fourteenth Amendment requires states to "prove every element of a criminal offense beyond a reasonable doubt." This principle ... prohibit[s] not only a mandatory presumption, but any presumption which a reasonable juror may read as mandatory.

Because the instruction given in *Krucheck* did not tell the jury the presumption was permissive, we held it violated the Fourteenth Amendment. We said, "When a jury is authorized to make use of presumptions, it must be informed that it may refuse to use them." *Id.* at 1225.

[¶ 15] As in *Krucheck*, neither the malice instruction nor any other instruction told the jury in Mr. Hernandez's case that the presumption was not mandatory and it could refuse to apply it. The malice instruction clearly violated W.R.E. 303(b) and the Fourteenth Amendment. The intent instruction likewise authorized the jury to make use of the presumption but failed to inform the jury it was not required to do so. Therefore, the intent instruction violated W.R.E. 303(b) and the Fourteenth Amendment.

[¶ 16] Given the clearly established law, the State concedes Mr. Hernandez has satisfied the first two elements of the plain error standard because the claimed error appears clearly in the record and the district court violated a clear rule of law in giving the instructions. The State contends, however, that Mr. Hernandez cannot show the instructions deprived him of a substantial right resulting in material prejudice.

[¶ 17] This Court has not previously addressed the material prejudice part of the plain error test in a case involving a jury instruction containing an unconstitutional mandatory presumption. In *Krucheck*, the defendant objected to the instruction and so we did not apply the plain error test. In *Brooks*, there was no objection because the jury instruction containing the alleged presumption was offered by the defense. Additionally in *Brooks*, upon considering the instruction in its entirety we concluded there was no error because there was no possibility the jury could have believed it was required to make the presumption. *Brooks*, 706 P.2d at 668. In *Merchant v. State,* 4 P.3d 184, 190 (Wyo.2000) and *Ellison v. State,* 3 P.3d 845, 849 (Wyo.2000), we likewise concluded the instructions were not erroneous because they did not create mandatory presumptions.

[¶ 18] Looking to federal cases, the Tenth Circuit Court of Appeals has said the analysis is the same under either plain or harmless error—the court must evaluate the effect of the error on the reliability of the jury verdict.[1] *United States v. Wiles,* 102 F.3d

---

1. This is not to suggest there is no difference between plain and harmless error. As the Court stated in *United States v. Wiles*, 102 F.3d 1043, 1055 (10th Cir.1996), one important difference is that the State has the burden of proving harmless error, while the defendant has the burden of proving plain error.

1043, 1055 (10th Cir.1996). That is, the error must be quantitatively assessed in the context of the evidence presented to determine whether it was harmless beyond a reasonable doubt. This is essentially the same test we applied in *Krucheck,* 671 P.2d at 1225, where we held the error was not harmless beyond a reasonable doubt because it was reasonable to conclude the jury may not have convicted the defendant of second degree murder if it had known the presumption was not mandatory.

[¶ 19] After this Court's decision in *Krucheck,* the United States Supreme Court decided *Yates v. Evatt,* 500 U.S. 391, 403–04, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991), in which it elaborated on the test for determining error in the context of jury instructions containing mandatory presumptions. The Court said:

> To say that an error did not contribute to the verdict is ... to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record. Thus, to say that an instruction to apply an unconstitutional presumption did not contribute to the verdict is to make a judgment about the significance of the presumption to reasonable jurors, when measured against the other evidence considered by those jurors independently of the presumption.

[¶ 20] The process under *Yates* for arriving at a judgment about the presumption's significance to the jurors involves two steps. First, the court asks what evidence the jury actually considered in reaching its verdict. *Id.* at 404, 111 S.Ct. 1884. Second, the court weighs the probative force of that evidence against the probative force of the presumption standing alone. *Id.*

> It will not be enough that the jury considered evidence from which it could have come to the verdict without reliance on the presumption. Rather, the issue ... is whether the jury actually rested its verdict on evidence establishing the presumed fact beyond a reasonable doubt, independently of the presumption. Since that inquiry cannot be a subjective one into the jurors' minds, a court must approach it by asking whether the force of the evidence presum-

ably considered by the jury in accordance with the instructions is so overwhelming as to leave it beyond a reasonable doubt that the verdict resting on that evidence would have been the same in the absence of the presumption. It is only when the effect of the presumption is comparatively minimal to this degree that it can be said ... that the presumption did not contribute to the verdict.

*Id.* at 405–06, 111 S.Ct. 1884. As part of this analysis, it is crucial to ascertain from the trial court's instructions that the jurors, as reasonable persons, would have considered the entire trial record. *Id.* at 406, 111 S.Ct. 1884.

[¶ 21] Applying this test in *Yates,* the United State Supreme Court held that it could not conclude beyond a reasonable doubt that the presumption instructions had not contributed to the jury's finding of intent to kill. In *Yates,* two men, Yates and Davis, were involved in the armed robbery of a store during which Davis killed the store proprietor's mother and then Davis was killed. Yates was charged as an accomplice to murder as a result of the woman's death. In order to find Yates guilty as an accomplice to murder, the State had to prove Davis intended to kill the woman. The Court reviewed the record and determined:

> The most that can be said with certainty was that [the woman] joined the struggle between Davis and [the proprietor] and was stabbed during the course of it. She could have been killed inadvertently by Davis, and we cannot rule out that possibility beyond a reasonable doubt.

> In sum, the evidentiary record simply is not clear on Davis' intent to kill the victim. Without more, we could not infer beyond a reasonable doubt that the presumptions did not contribute to the jury's finding of Davis' intent to kill [the woman] and to the ensuing verdict of petitioner's guilt as Davis' accomplice.

*Yates,* 500 U.S. at 411, 111 S.Ct. 1884.

[¶ 22] Applying the *Yates* test to the error in Mr. Hernandez's case, we begin by asking what evidence the jury considered in reaching its verdict. We presume the jury

considered the following testimony: there had been friction between Mr. Hernandez and Mr. Johnson throughout the day and Mr. Johnson had physically assaulted Mr. Hernandez two or three times. When Mr. Johnson came back into the room after the coffee table altercation, Mr. Hernandez rose from his chair and crossed the room toward him. As Mr. Hernandez approached Mr. Johnson, Mr. Hernandez had a knife and said something to the effect that he would be going to the penitentiary. Immediately after Mr. Hernandez approached him, Mr. Johnson began bleeding from his throat and Mr. Scheuerman quickly determined he needed to take Mr. Johnson to the emergency room. The emergency room doctor testified that Mr. Johnson had a laceration from his ear down through his neck to the bottom of his throat that almost completely severed the carotid artery, one of the main arteries to the brain—an injury which would have left Mr. Johnson dead in less than an hour without medical attention. Mr. Hernandez had been drinking throughout the day, and when police arrested him an hour or so after the incident, he was intoxicated to the point that his speech was slurred and he staggered as he was placed in handcuffs.

[¶ 23] Turning to the second part of the *Yates* test, we weigh the probative force of the evidence against the probative force of the presumption standing alone. The question we ask is: was the force of the evidence presumably considered by the jury in accordance with the instructions so overwhelming as to leave it beyond a reasonable doubt that the verdict resting on that evidence would have been the same in the absence of the presumption? *Yates,* 500 U.S. at 405, 111 S.Ct. 1884. In answering this question we must ascertain whether the trial court instructed the jurors to consider the entire trial record in reaching a verdict. *Id.* at 406, 111 S.Ct. 1884. We consider the jury instructions as a whole without singling out individual instructions or parts of instructions. *Ellison,* 3 P.3d at 849.

[¶ 24] Prior to submitting the case to the jury for deliberations, the trial court instructed the jury that it was tasked with weighing and considering all of the evidence presented.

The court also instructed the jury that at all times in the proceedings the State had the burden of proving the defendant's guilt beyond a reasonable doubt as to each element of the offense. The court instructed the jury that if it found a reasonable doubt upon any single element of the charged crime, it had to find the defendant not guilty.

[¶ 25] Concerning the charged offense of attempted second degree murder, the court instructed the jury that it should find Mr. Hernandez guilty if it found that, with the intent to commit second degree murder, he did any act which was a substantial step toward committing the crime of second degree murder. The jury also was instructed that a person who purposely and maliciously, but without premeditation, kills a human being is guilty of second degree murder. With these instructions, the jury was again admonished that if it found from the evidence that any of the elements were not proved beyond a reasonable doubt, it should find the defendant not guilty.

[¶ 26] The jury was also instructed that an attempt is an effort or endeavor to accomplish a crime, involving more than preparation or planning, which if not prevented would have resulted in consummation of the act attempted. The jury was instructed on the meaning of deadly weapon and that use of one gives rise to a presumption of intent to kill and malice. Finally, the court instructed the jury that it was not to single out any individual instruction but to consider all of the instructions together, regarding each in light of the others.

[¶ 27] We conclude that the force of the evidence presumably considered by the jury in accordance with the court's instructions was not so overwhelming to leave it beyond a reasonable doubt that the verdict would have been the same without the presumptions. Given the evidence, the most that can be said with certainty is that Mr. Hernandez assaulted Mr. Johnson with a deadly weapon and caused serious injury. The evidence does not show beyond a reasonable doubt that Mr. Hernandez had the specific intent to kill Mr. Johnson. We cannot conclude beyond a reasonable doubt that the jury would have convicted Mr. Hernandez of

attempted second degree murder in the absence of instructions that the jurors could have understood required them to find malice and intent from the fact that Mr. Hernandez used a deadly weapon. Stated in terms of the plain error analysis, Mr. Hernandez has shown the error in giving the instructions deprived him of his right to due process resulting in material prejudice.

[¶ 28] Our conclusion is strongly influenced by another factor requiring discussion. As mentioned above, Mr. Hernandez's defense focused on proving that he was too intoxicated to form the intent to commit attempted second degree murder or attempted voluntary manslaughter. The jury was instructed on this defense as follows:

Evidence has been introduced tending to show that at the time the crime ... was allegedly committed, the defendant was suffering from self-induced intoxication.

Self-induced intoxication is a defense to the crime of attempted second degree murder and attempted voluntary manslaughter if the defendant was intoxicated to such a degree that he was unable to formulate the intention to commit the felony of attempted second degree murder or attempted voluntary manslaughter.

* * *

Accordingly, if you find that the defendant ... was suffering from self-induced intoxication to such a degree that there is a reasonable doubt in your minds whether the defendant possessed the mental ability to form the intention to commit the felony of attempted second degree murder, or attempted voluntary manslaughter, then you should find the defendant not guilty....

The difficulty with the mandatory presumption instructions is that they told the jury it must find intent and malice if it found Mr. Hernandez used a deadly weapon. If the jurors followed those instructions, they may have concluded they had to disregard the theory of defense instruction.

[¶ 29] Due process requires the trial court to give a correct instruction to the jury that details the defendant's theory of the case when the theory is supported by competent evidence and is recognized by

statute or case law. *Holloman v. State*, 2002 WY 117, ¶ 15, 51 P.3d 214, 219 (2002). This Court has recognized that intoxication is a defense to a specific intent crime. *Wilks v. State*, 2002 WY 100, ¶ 21, 49 P.3d 975, 984–85 (2002). An "attempt" is a "specific intent" crime. *Reilly v. State*, 2002 WY 156, ¶ 8, 55 P.3d 1259, 1262 (2002). Thus, Mr. Hernandez was entitled to have the jury instructed on this theory that he was too intoxicated to form the intent to commit the offense of attempted second degree murder if there was competent evidence to support the theory.

[¶ 30] The testimony was that all of those present at the Scheuerman home were drinking throughout the day. Ms. Chapa testified that she and Mr. Hernandez arrived at the Scheuerman house mid-morning. She testified Mr. Hernandez had been drinking before they got there and continued to drink throughout the day. She testified that she saw Mr. Hernandez drink somewhere between six and twelve beers and that he was "pretty buzzed" by the time they left. Ms. Scheuerman testified that Mr. Hernandez was drunk. Sergeant Tom Brase of the Worland Police Department testified that when he arrested Mr. Hernandez, he was "inebriated to the point it was causing him to stagger, slur his speech. He was drunk." Sergeant Brase testified that he had to hold the handcuffs he had placed on Mr. Hernandez to steady him in order to get him into the patrol car.

[¶ 31] Despite competent evidence of his intoxication, we do not know whether the jurors considered Mr. Hernandez's theory of defense in light of the instructions telling them they were required to find malice and intent if they found Mr. Hernandez used a deadly weapon. Thus, the instructions potentially deprived Mr. Hernandez of his defense. Under the circumstances, we cannot conclude that the error in giving the mandatory presumption instructions, without also instructing the jury that it was not required to find the presumptions, was harmless beyond a reasonable doubt.

## 2. *Prosecutorial Misconduct*

[¶ 32] Mr. Hernandez also claims the prosecutor committed misconduct when

he incorrectly told the jury during his closing argument that this Court has held that use of a deadly weapon raises the presumption of intent and malice. No objection was made to the prosecutor's remarks; therefore, we review them for plain error. The State responds by asserting that the prosecutor's remarks did not constitute misconduct because they were phrased in permissive, rather than mandatory, language.

[¶ 33] In his closing argument, the prosecutor made the following statements:

[T]he Wyoming Supreme Court has stated that you can make certain presumptions based on the actions of someone. They stated that use of a deadly weapon, clearly a knife is a deadly weapon, it can—you all know that a knife can kill someone, and it's reasonable to assume that Mr. Hernandez knew that if he cut somebody's throat that he could very well kill them. And in this case he came very, very, very close, within a half hour of actually killing Mr. Johnson.

But the use of a deadly weapon gives rise to the presumption of the intent to kill. So I think you can presume that Mr. Hernandez, by using a knife on Mr. Johnson's throat, intended to kill him.

* * *

And also in determining malice, the Supreme Court in the State of Wyoming has also said that you can use another presumption to determine if malice was present, and that is the use of a deadly weapon, which we have in this case, the use of a knife, in a deadly and dangerous manner raises a presumption of malice. So if someone uses a deadly weapon in a deadly and dangerous manner you can find malice. . . .

■ [¶ 34] Whether or not the prosecutor's remarks were stated in permissive language, the instructions themselves told the jurors that they were required to find the presumptions upon finding Mr. Hernandez used a deadly weapon. Plain error occurred in giving the instructions and it was plain error for the prosecutor to argue them.

### 3. Cumulative Error

[¶ 35] Mr. Hernandez asserts other errors occurred at trial that, when combined with the error in the jury instructions and the prosecutor's closing remarks, constituted cumulative error depriving him of a fair trial. Our holding that it was plain error to give the mandatory presumption instructions is determinative of the appeal. However, we address Mr. Hernandez's cumulative error claim because retrial is a possibility and these same questions may arise again.

[¶ 36] Mr. Hernandez's cumulative error argument is based on three additional alleged errors: first, a police officer called by the State commented during his testimony on Mr. Hernandez's right to remain silent; second, the trial court admitted into evidence a knife that was not connected by forensic testing to the stabbing; and, third, the trial court failed to instruct the jury on the elements of the lesser included offense of attempted voluntary manslaughter. We address each of these alleged errors separately.

[¶ 37] The State called Sergeant Brase to testify about his involvement in the investigation after receiving the report from the hospital that Mr. Johnson had been stabbed. On redirect, the following exchange occurred:

Q. Sergeant, when you dealt with Mr. Hernandez was he rational?

A. He knew that he was being placed under arrest, yes.

Q. He knew what was going on?

A. Yes, he invoked his Miranda rights when I advised him of his Miranda, and he said he didn't want to talk to me, wanted to remain silent.

Q. Nothing further.

Defense counsel did not object to the testimony. This exchange followed defense counsel's cross-examination of Sergeant Brase during which counsel attempted to show that Mr. Hernandez was intoxicated to a degree that he was staggering and slurring his speech when Sergeant Brase arrested him an hour after the stabbing.

■ [¶ 38] In addressing claims of improper comment on the right to silence, we evaluate the entire context in which the statements were made and consider whether

the prosecutor asked improper questions, emphasized or followed up on the silence issue, or attempted to exploit the issue in any way. *Abeyta v. State,* 2003 WY 136, ¶ 12, 78 P.3d 664, 667–68 (2003).

> A prosecutor does not "comment" on a defendant's exercise of his right to silence where he does not attempt to use the silence to the state's advantage, where he does not argue to the jury that the silence was evidence of guilt or an admission of guilt, and where the defendant does not show any prejudice. Material prejudice is shown only where there is a reasonable possibility that the verdict would have been more favorable to the defendant if the evidence or prosecutorial comment had not been allowed.

*Id.,* ¶ 14, 78 P.3d at 668 (citations omitted).

■■■ [¶ 39] From the entire context in which Sergeant Brase's testimony was given, it is clear the prosecutor's question was not improper. He was attempting to establish only that Mr. Hernandez appeared to be sufficiently sober to understand what was happening at the time of his arrest to refute the intoxication defense. When Sergeant Brase responded with the comment that Mr. Hernandez invoked his Miranda rights and wanted to remain silent, the prosecutor ceased his questioning. He did not mention Sergeant Brase's comment in closing argument. Mr. Hernandez has failed to show material prejudice resulted from the comment.

[¶ 40] After Mr. Hernandez's arrest, police offers obtained a search warrant and searched the Scheuerman residence. They found a knife under some magazines on an end table next to the couch in the living room. During the trial, the trial court admitted the knife into evidence over defense counsel's objection that there had been no showing that it was connected to the alleged stabbing other than the fact that it was found in the home where the stabbing occurred. Mr. Hernandez claims the trial court erred in admitting the knife.

■■■ [¶ 41] Rulings on the admission of evidence are within the sound discretion of the trial court. *Sanchez v. State,* 2006 WY 116, ¶ 20, 142 P.3d 1134, 1140 (2006). In order to successfully challenge such a ruling on appeal, an appellant must show that the trial court abused its discretion. *Id.* We give a trial court's rulings on the admissibility of evidence considerable deference and will not disturb such a ruling as long as a legitimate basis exists for the ruling. *Id.*

[¶ 42] The knife which is the basis of Mr. Hernandez's claim of error was found by police during their search of the Scheuerman home. Officer Brad Horath testified it was found on an end table in the vicinity of where Mr. Hernandez was sitting in the living room where the stabbing occurred. Defense counsel objected to its admission on relevance grounds.

[¶ 43] Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less than it would be without the evidence. W.R.E. Rule 401. All relevant evidence is admissible. W.R.E. Rule 402. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. W.R.E. Rule 403.

■■■ [¶ 44] The only basis for defense counsel's objection was that there was nothing connecting the knife to the stabbing other than the location where it was found. Presumably, the trial court found the location of the knife in the living room of the home where the stabbing occurred sufficient to make it relevant. We defer to the trial court and will not disturb its ruling because we conclude a legitimate basis existed for the ruling. Officer Horath's testimony that there was no blood on the knife, no testing for fingerprints was performed and there was nothing connecting the knife to the injuries suffered by Mr. Johnson was fertile ground for cross-examination; his testimony was not, however, grounds for excluding the knife on the basis of relevancy.

■■■ [¶ 45] Mr. Hernandez's final claim of error is that the jury was not instructed

on the elements of the lesser included offense of attempted voluntary manslaughter. Although defense counsel offered an elements instruction, he did not object when the trial court failed to give the proposed instruction. Therefore, we review his claim for plain error.

[¶ 46] In *Cutbirth v. State*, 663 P.2d 888 (Wyo.1983), the defendant was charged with and convicted of second degree murder. He claimed plain error occurred because the trial court incorrectly instructed the jury on the elements of the lesser included offense of involuntary manslaughter. Specifically, the court's instruction incorrectly suggested that intent was an element of the lesser included offense. We stated: "It is difficult to see how a deficient instruction on a lesser offense upon which there was no conviction could be plain error." *Id.* at 892. We also said:

> The court instructed the jury on the statute and elements of second degree murder, and defined purposely, maliciously and premeditation, words which appear in the second degree murder statute. The court also instructed the jury that if it did not find appellant guilty of second degree murder, it must proceed to determine guilt or innocence of any lesser included offense, one of which is involuntary manslaughter. In this case, then, the jury did not consider involuntary manslaughter, nor did it need to read the instructions pertaining to that lesser included offense....
>
> Appellant has alleged instructional error on something that the jury did not consider or need to consider. There is no merit in this assignment of error.

*Id.*

[¶ 47] As in *Cutbirth*, the jury in Mr. Hernandez's case was instructed on the statute and elements of second degree murder. The trial court also instructed the jury that if it did not find Mr. Hernandez guilty of second degree murder, it could find him guilty of the lesser offense of attempted voluntary manslaughter. Because the jury determined that Mr. Hernandez was guilty of attempted second degree murder, it did not consider the lesser offense. Mr. Hernandez has not shown he was materially prejudiced by the instruction. In the event of a re-trial,

however, the lesser included offense instruction should include the elements the jury must find in order to convict on the attempted voluntary manslaughter charge.

### CONCLUSION

[¶ 48] The trial court erred when it instructed the jury that use of a deadly weapon raises a presumption of malice and intent to kill without also instructing the jury it was not required to find the presumptions and the State still had to prove intent and malice beyond a reasonable doubt. We are unable to conclude beyond a reasonable doubt that the jury would have convicted Mr. Hernandez of attempted second degree murder in the absence of the erroneous instructions. The error affected Mr. Hernandez's substantial right and resulted in material prejudice. Therefore, we reverse his conviction and remand for further proceedings consistent with this opinion.