# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 17

OCTOBER TERM, A.D. 2014

*February 4, 2015*

JOHN THOMAS HEREFORD,

Appellant
(Defendant),

v.                                                                    S-14-0040

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Fremont County*
*The Honorable Norman E. Young, Judge*

*Representing Appellant:*
Office of the State Public Defender: Diane Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; David E. Westling, Senior Assistant Appellate Counsel. Argument by Mr. Westling.

*Representing Appellee:*
Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Jenny L. Craig, Senior Assistant Attorney General; Darrell D. Jackson, Faculty Director, A. Walker Steinhage, Student Director, and Amanda Lemish, Student Intern, of the Prosecution Assistance Program. Argument by Ms. Lemish.

*Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, Justice.

[¶1]    A jury found Appellant John Thomas Hereford guilty of second-degree murder for shooting and killing his cousin, and also of kidnapping and sexually assaulting his cousin's girlfriend.  Appellant challenges his convictions on two theories.  He claims that the district court erred in instructing the jury that it could presume malice from the use of a deadly weapon, and by not severing the murder charge from the other counts.

[¶2]    We conclude that the permissive presumption instruction was proper, and that the district court did not err in declining to sever the kidnapping and sexual assault charges from the murder charge.  Therefore, we affirm.

## ISSUES

[¶3]    1.   Did the district court err in instructing the jury that it could, but was not required to, presume malice from the use of a deadly weapon?

2.       Did the district court abuse its discretion when it denied Appellant's motion to sever the second-degree murder charge from the remaining counts?

## FACTS

[¶4]    Appellant, his cousin Travis Armajo, and their respective girlfriends, M.H. and B.B., spent an evening drinking alcohol together.  They all drove to a local convenience store, purchased some rum, and then went to the trailer home where Appellant and M.H. lived.  As he was driving the group back to the trailer, Appellant showed the others a black pistol and said "I'm going to waste a few shells on somebody."

[¶5]    Once back at the trailer, the group began drinking and playing dominoes.  After a while, B.B. left and walked a few blocks to the mobile home where she and Mr. Armajo lived.  According to B.B., she left because M.H. asked her to.  Appellant then went to B.B.'s residence and drove her back to his trailer, explaining that Mr. Armajo wanted her to return.  At approximately 12:20 a.m., M.H., whom B.B. described as drunk and aggressive, again requested that she leave.  B.B. left as requested, walked home, locked the door, and went to bed.

[¶6]    B.B. testified that about a half hour later, Appellant pounded on her door and yelled at her to open up.  She did so and asked him to leave.  He instead forced his way in and hit her in the face with his pistol.  She ran away and got out of the trailer through the back door, but tripped just outside and fell to the ground.  Appellant caught up and forced her back into the house by pointing his gun at the back of her head.  Once back in the trailer, Appellant started to rip B.B's clothes off, and he told her that he was going to rape

1

and kill her. While holding his gun to her head, he forced his fingers into her vagina and then made her perform oral sex on him.

[¶7] During this nightmarish incident, B.B. repeatedly asked Appellant where her boyfriend Mr. Armajo was. Appellant eventually told her that he had shot and killed him. He told B.B. that if she did not comply with his demands for oral sex that there would be "one more dead body." She eventually escaped and ran to a neighbor's house and pounded on the door, but no one answered. Appellant sat outside in his vehicle pointing the gun in her direction, but then drove away. B.B. hid under a tree and then a bush until she saw the lights of law enforcement vehicles on their way to Appellant's residence a short distance away. She then ran there to seek help.

[¶8] While B.B. was hiding and in fear for her life, Appellant drove to his mother's house. His mother called the police after he told her that he had shot and killed Mr. Armajo. When the police arrived at Appellant's mother's house, they observed blood on his clothing. As Appellant was being taken into custody, he asked an officer "[w]hat prison do you think I'll be going to?" The investigating officers found Appellant's black pistol on the passenger seat of his car.

[¶9] At Appellant's trailer, other officers found Mr. Armajo dead in a pool of blood with three gunshot wounds to his head and shoulder. They also discovered M.H., who had slept through the shooting, passed out in a bedroom.

[¶10] Ballistics tests proved that Appellant's black pistol fired at least two of the three bullets recovered: one from Mr. Armajo's skull and one from a couch.[1] Forensic testing of the pistol also revealed traces of B.B.'s blood and a hair, which supported her account that Appellant struck her in the face with the gun. When officers canvassed B.B.'s home, they found a bloody shoeprint on the front door and a bloody shoe inside.[2] Forensic testing confirmed that the blood on the door and shoe was Mr. Armajo's. The blood found on Appellant's pants was also tested and determined to be Mr. Armajo's. Law enforcement obtained Appellant's cell phone records and found, *inter alia*, a text message he sent around the time of the shooting, which stated "Drinkin Killinkin."

[¶11] Mr. Hereford was charged and bound over to the district court on one count of second-degree murder in violation of Wyo. Stat. Ann. § 6-2-104, one count of kidnapping-confinement in violation of Wyo. Stat. Ann. § 6-2-201(a)(ii), (d), and two counts of first-degree sexual assault in violation of Wyo. Stat. Ann. § 6-2-302(a)(ii). He pled not guilty to all charges.

---

[1] The third bullet recovered was not intact and therefore could not be tested.
[2] Appellant's mother testified that when Appellant arrived at her house, he was not wearing shoes. Furthermore, M.H. testified that the shoe looked like a shoe Appellant wore.

[¶12] Before trial, Appellant moved to sever the murder charge for killing Mr. Armajo from the other charges, contending that the crimes relating to B.B. were distinct, and that joinder would unfairly prejudice him. The district court denied his motion, finding that Appellant would not suffer unfair prejudice and that the crimes were reasonably connected in time and vicinity, and by overlapping evidence.

[¶13] The case proceeded to jury trial in due course. One of the instructions told the jury that it may, but was not required to, presume malice (one of the elements of second degree murder) from the use of a deadly weapon. Appellant's counsel objected to that instruction. After the instructions were read and closing arguments were made, the jury deliberated and returned a verdict of guilty on the charges of second-degree murder, kidnapping-confinement and one of the two counts of first-degree sexual assault. Appellant was sentenced to not less than fifty years nor more than life for second degree murder, not less than fifty years nor more than life for kidnapping-confinement, and not less than forty-five nor more than fifty years for first degree sexual assault, with all sentences to run concurrently. This appeal was timely perfected.

## DISCUSSION

### *Jury Instructions*

[¶14] It is a basic principle of due process that the State must prove each and every element of a crime beyond a reasonable doubt. *Hernandez v. State*, 2007 WY 105, ¶ 11, 162 P.3d 472, 476 (Wyo. 2007); *Sandstrom v. Montana*, 442 U.S. 510, 520, 99 S.Ct. 2450, 2457, 61 L.Ed.2d 39 (1979). The judge's instructions on the law and how evidence should be assessed are vital in assuring that the jury understands what must be proved and by whom, and how it should evaluate testimony and other evidence. *Andersen v. State*, 2014 WY 88, ¶ 14, 330 P.3d 256, 260 (Wyo. 2014) ("Two major principles of our system of justice are unwavering adherence to the rule of law, and trust in juries to resolve factual disputes. Correct instructions on the law are the thread that binds those two principles together.").

[¶15] We have held that "jury instructions containing any presumption that a reasonable juror may read as mandatory are prohibited," *Hernandez*, ¶ 11, 162 P.3d at 476, as the Fourteenth Amendment forbids shifting the burden of proof to require a defendant to disprove an element of the crime charged. *Id.*, ¶¶ 11-14, 162 P.3d at 476-77; *Krucheck v. State*, 671 P.2d 1222, 1224-25 (Wyo. 1983) (analyzing *Sandstrom*); *see* 1 *Wharton's Criminal Evidence* § 3:3 (15th ed., updated 2014) ("[I]f a presumption has the effect of shifting this burden of proof, it violates the defendant's due process rights."). However, a jury in a criminal case may be instructed on "permissive presumptions" if the connection between the presumed fact and the proven fact is one that reason and common sense justify in the light of the circumstances of the case. *Harley v. State*, 737 P.2d 750, 754

3

(Wyo. 1987); *Eckert v. State*, 680 P.2d 478, 483-84 (Wyo. 1984); *Francis v. Franklin*, 471 U.S. 307, 314-15, 105 S.Ct. 1965, 1971, 85 L.Ed.2d 344 (1985).

[¶16] Instruction No. 13 listed the elements of murder in the second degree, and the fourth element on the list required that the crime be committed "purposely and maliciously."[3] Instruction No. 13 also specified that each of the elements had to be proved beyond a reasonable doubt. Instruction No. 14 defined "malice" and "maliciously" as follows:

> The term malice means that the acts constituting the offense charged were done intentionally, without legal justification or excuse or that the acts were done in such a manner as to indicate hatred, ill will, or hostility toward another.
>
> "Maliciously" means acting in the state of mind in which an intentional act is done without legal justification or excuse. The term "maliciously" conveys the meaning of hatred, ill will, or hostility toward another. [4]

[¶17] Appellant does not challenge these instructions, but instead contends that Instruction No. 15, which follows, was improper:

### INSTRUCTION NO. 15

> You are instructed that you may, but are not required, to presume malice from the use of a deadly weapon. This presumption is not mandatory and the existence of malice, as well as each and every element of the charge of murder in the second degree, must be proved beyond a reasonable doubt.

Appellant argues that the instruction shifts the burden of proof, i.e., that because it refers to a presumption, it told the jury that malice was established if the Appellant did not prove otherwise.

[¶18] Before we examine the challenged instruction in this case, it would be helpful to pause and touch upon the terminology of presumptions and inferences as used in

---

[3] ". . . whoever purposely and maliciously, but without premeditation, kills any human being is guilty of murder in the second degree, and shall be imprisoned in the penitentiary for any term not less than twenty (20) years, or during life." Wyo. Stat. Ann. § 6-2-104 (LexisNexis 2013).
[4] We recently clarified the meaning of the term "maliciously" as used in the second degree murder statute. *Wilkerson v. State*, 2014 WY 136, 336 P.3d 1188 (Wyo. 2014). That decision was rendered after briefing was complete in this case.

decisions in other criminal cases. A mandatory presumption shifts the State's burden of proof to the defendant, in violation of the Fourteenth Amendment. *Hernandez*, ¶ 14, 162 P.3d at 476; *Sandstrom*, 442 U.S. at 519, 99 S.Ct. at 2456-57; 2 *McCormick on Evidence* § 347 (7th ed., updated 2014). In *Hernandez*, we found that the jury instructions contained a mandatory presumption because they told the jury that it must find malice if it found that the defendant used a deadly weapon. *Hernandez,* ¶¶ 11-16, 162 P.3d at 476-77. Simply put, the jury was given no choice. *Id.*

[¶19] On the other hand, a permissive presumption is one that allows, but does not require, a jury to infer a presumed fact from proof of the other facts. *Cnty. Court of Ulster Cnty., N.Y. v. Allen*, 442 U.S. 140, 157, 99 S.Ct. 2213, 2224, 60 L.Ed.2d 777 (1979); *Francis*, 471 U.S. at 314, 105 S.Ct. at 1971; 2 *McCormick on Evidence* § 346; 1 *Wharton's Criminal Evidence* § 3:3. It "suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion." *Francis*, 471 U.S. at 314, 105 S.Ct. at 1971. A permissive presumption is an inference, and the terms are used interchangeably. *See, e.g.*, *Cnty. Court of Ulster Cnty.*, 442 U.S. at 157, 99 S.Ct. at 2224 ("The most common evidentiary device is the entirely permissive inference or presumption . . . ."); *Harley*, 737 P.2d at 754 (examining inferences and presumptions); 1 Wayne R. LaFave, *Substantive Criminal Law* § 5.2(f) (2d ed., updated 2014); 2 *McCormick on Evidence* § 346. A permissive presumption or inference will satisfy the constitution "so long as the connection between the inferred fact and the proven fact is one that reason and common sense justify in the light of the facts in a particular case." *Harley*, 737 P.2d at 754; *see also Francis*, 471 U.S. at 314-15, 105 S.Ct. at 1971 ("A permissive inference violates the Due Process Clause only if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury."); 2 *McCormick on Evidence* § 347.

[¶20] These distinctions are reflected in Wyoming Rule of Evidence 303, which states:

> (a) *Scope.* – Except as otherwise provided by statute, in criminal cases, presumptions against an accused, recognized at common law or created by statute, including statutory provisions that certain facts are prima facie evidence of other facts or of guilt, are governed by this rule.

> (b) *Submission to Jury.* – The court is not authorized to direct the jury to find a presumed fact against the accused. If a presumed fact establishes guilt or is an element of the offense or negatives a defense, the court may submit the question of guilt or of the existence of the presumed fact to the jury, but only if a reasonable juror on the evidence as a whole, including the evidence of the basic facts, could find guilt or the presumed fact beyond a reasonable doubt. If the presumed

5

fact has a lesser effect, the question of its existence may be submitted to the jury provided the basic facts are supported by substantial evidence or are otherwise established, unless the court determines that a reasonable juror on the evidence as a whole could not find the existence of the presumed fact.

(c) *Instructing the Jury.* – Whenever the existence of a presumed fact against the accused is submitted to the jury, the court shall instruct the jury that it may regard the basic facts as sufficient evidence of the presumed fact but is not required to do so. In addition, if the presumed fact establishes guilt or is an element of the offense or negatives a defense, the court shall instruct the jury that its existence, on all the evidence, must be proved beyond a reasonable doubt.[5]

W.R.E. 303.

---

[5] Wyoming's rule is similar to the Uniform Rule, which states:

> (c) Instructing the jury. At the time the existence of a presumed fact against the accused is submitted to the jury, the court shall instruct the jury that it may regard the basic fact as sufficient evidence of the presumed fact but is not required to do so. In addition, if a presumed fact establishes guilt, is an element of the offense, or negates a defense, the court shall instruct the jury that its existence, on all the evidence, must be proved beyond a reasonable doubt.

Rule 303(c) of the Revised Uniform Rules of Evidence (2005); *see, e.g.*, 2 *McCormick on Evidence* § 348. The comment to the Uniform Rule explains:

> The rule provides that the effect of a presumption in a criminal case is permissive only by providing that the court may not direct the jury to find a presumed fact against an accused. If the court submits the question of the existence of a presumed fact to the jury, it shall instruct the jury that it may regard the basic fact as sufficient evidence of the presumed fact but is not required to do so. The permissive effect given to a presumption in criminal cases under Rule 303 is constitutionally in accord with this lesser effect to be given presumptions in criminal cases without incorporating the complexities associated with the allocation of the burden of producing evidence or of persuasion where a presumption is found to be mandatory. *See County Court of Ulster County v. Allen*, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979), *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) and *Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985).

Comment, Rule 303 of the Revised Uniform Rules of Evidence.

[¶21]  The presumption contained in this instruction is one that a reasonable juror could only view as permissive when it is read with all of the other instructions.[6]  *Harley*, 737 P.2d at 755; *Hernandez*, ¶ 14, 162 P.3d at 477 ("When a jury is authorized to make use of presumptions, it must be informed that it may refuse to use them.").  We conclude that it is not mandatory and does not shift the burden of proof, and that it therefore complies with the constitution, controlling case law, and the requirements set out in W.R.E. 303(c).

[¶22]  That said, we have two observations.  The district court was not required to give Instruction No. 15, and there may be cases in which a court should decline to provide such an instruction, as it may be unnecessary.  In addition, if such an instruction is given, it would be preferable that it speak in terms of an "inference" as that term is probably more readily understood by lay jurors:

> You are instructed that you may, but are not required to, infer malice from the use of a deadly weapon.  The existence of malice, as well as each and every element of the charge of murder in the second degree, must be proved beyond a reasonable doubt.

[¶23]  As already discussed above, a permissive presumption is an inference, and nothing is lost by using that terminology.  *See* 1 Mueller and Kirkpatrick, *Federal Evidence* § 3:19 (4th ed, updated 2014) ("[t]he term 'presumption' is a misnomer in criminal cases" when it may operate against the defendant).  In addition, juries are always instructed, as they were in this case, that the defendant is presumed innocent, and that this presumption remains until the jury is satisfied that the State has proved each and every element of the charged offense beyond a reasonable doubt.[7]  Although we do not believe that it would

---

[6] Indeed, Appellant seemingly concedes as much in his brief submitted to this Court.

[7] Wyoming Criminal Pattern Jury Instruction 1.03, which is often if not universally given, provides as follows:

> The law raises no presumption against the defendant but rather, the presumption of law is in favor of his innocence.  In order to convict the defendant of the crime charged, every material and necessary element to constitute such a crime must be proved beyond a reasonable doubt.  If the Jury has a reasonable doubt on any necessary element, it is your duty to give the benefit of such doubt to the defendant and acquit him.  This presumption of innocence is not merely a matter of form which the Jury may disregard at pleasure, but rather it is a part of the law of the land.  It is a right guaranteed by the law to every person accused of a crime.  This presumption of innocence continues with the defendant through all the stages of the trial and until the case has been finally submitted to the jury and until the jury has found that this presumption has been overcome by the evidence in the case convincing you of his guilt beyond a reasonable doubt.

have been possible for a reasonable juror to do so after reading all of the instructions in this case, use of the word "presumption" to refer to an inference could lead to confusion in other situations.

[¶24]  Turning to the second step of the analysis, we must also determine "whether the inference to be drawn from the predicate facts is a rational one, or to paraphrase *Francis v. Franklin, . . .* the conclusion is one common sense justifies in light of the established facts of the case." *Harley*, 737 P.2d at 755; *see* 29 Am. Jur. 2d *Evidence* § 209 (updated 2014).  This is so, because "if the presumption or inference is permissive only, then it must be demonstrated that it was invalid in the particular case." *Harley*, 737 P.2d at 755; *see also Cnty. Court of Ulster Cnty.*, 442 U.S. at 157, 99 S.Ct. at 2224.  Appellant argues that reason does not justify the use of this permissive inference instruction concerning malice.  We are not persuaded.

[¶25]  In *Eckert v. State*, 680 P.2d 478 (1984), the defendant was also convicted of second-degree murder.  This Court concluded that an instruction containing a permissive presumption of malice from the use of a deadly weapon was lawful, as it was in accordance with *County Court of Ulster County* and W.R.E. 303(c).  *Id.* at 483.  We subsequently reaffirmed that "[i]f the facts and circumstances allow, then malice may be inferred by the use of a deadly weapon." *Braley v. State*, 741 P.2d 1061, 1069 (Wyo. 1987).

[¶26]  Thus, where a defendant's state of mind is at issue in a criminal case like this one, and if the facts and circumstances allow, our precedent permits a judge to instruct the jury that it may presume or infer malice by the use of a deadly weapon.  A scholarly source explains the justification for the deadly-weapon doctrine:

> One who intentionally kills another does not often announce to bystanders, "I have in my mind an intent to kill" at the moment, or just before or after, he kills.  If there are witnesses to the killing, he often acts without speaking at all or at least without speaking so specifically about his intent; and of course he often kills in secret, so that there are no witnesses.  How then can the prosecution prove beyond a reasonable doubt that when he killed he intended to kill?  Obviously this intent must be gathered from all the circumstances of the killing—the killer's actions and his words (if any) in the light of the surrounding circumstances.

---

The [Information] [Citation]  in this case is only a formal charge and is not to be considered any evidence of guilt on the part of the defendant.  Nothing is to be taken by implication against him.

2014 Wyo. Crim. Pattern Jury Inst. 1.03.

It is commonly said in civil and in criminal cases (not just murder cases) that one is presumed to intend the natural and probable consequences of his acts. Thus if one carefully aims a gun at his enemy and pulls the trigger, and the bullet strikes the enemy in the heart and kills him, we ought logically to conclude, in the absence of some other facts, that he intended to kill, though he spoke no words of intent at the time. A special application of the presumption that one intends to produce the natural results of his actions is found in the deadly-weapon doctrine applicable to homicide cases: one who intentionally uses a deadly weapon on another human being and thereby kills him presumably intends to kill him.

As a constitutional matter, it is necessary to express the idea, not in terms of a mandatory presumption, but in terms of a permissive inference: it may properly be inferred (i.e. the conclusion *may* be drawn, rather than *must* be drawn, in the absence of counter proof) from the fact that the killer intentionally used a deadly weapon upon the deceased that he intended to kill the deceased.

2 LaFave, *Substantive Criminal Law* § 14.2(b); *see also id.*, § 5.2(f); *Walden v. United States*, 19 A.3d 346, 349 (D.C. 2011) ("It is both desirable and necessary to instruct the jury that they may infer the existence of malice from other evidentiary facts, including the deadly nature of the weapon utilized.").

[¶27] A review of the evidence in this case, *see supra* ¶¶ 4-10, exposes the common sense justification and rational connection between permissive presumption of malice resulting from the use of a deadly weapon to the charge of second-degree murder. Facts supporting an inference of malice from the use of a deadly weapon (in this case, a pistol) include Appellant brandishing the pistol throughout the night and stating he was "going to waste a few shells on somebody," shooting Mr. Armajo three times at close range (twice in the head), and while sexually assaulting B.B., telling her that he had shot and killed her boyfriend and threatening to do the same to her. We are satisfied that the facts and circumstances of this case allowed an instruction that malice could be permissively presumed (or inferred) from Appellant's use of a pistol to kill Mr. Armajo.[8]

[¶28] Under the circumstances of this case, Instruction No. 15 was therefore appropriate. It properly explained that the jury could infer malice from the use of a deadly weapon,

---

[8] In fact, one might argue that telling a jury that it might infer malice was unnecessary. Nonetheless, as explained above, the law allows it to be so instructed.

although it was not required to do so. Accordingly, applying our standard of review for jury instruction issues, *see Andersen*, ¶ 10, 330 P.3d at 260, we conclude that the district court acted within the proper scope of its discretion when it instructed the jury as it did, although we would recommend referring to an inference rather than a presumption to avoid confusion in future cases.

### *Joinder of Offenses*

[¶29] Appellant also challenges the district court's denial of his motion to sever the second-degree murder charge for killing Mr. Armajo from the other charges of kidnapping and sexual assault relating to B.B. Appellant asserts that these charges involve "different victims, different locations and different times[,] are not of the same or similar character nor do they constitute one transaction."

[¶30] Trial courts have discretion to grant or deny motions for severance, and we will not disturb those decisions absent a clear abuse of that discretion. *Lessard v. State*, 2007 WY 89, ¶ 24, 158 P.3d 698, 704 (Wyo. 2007). A trial court does not abuse its discretion unless it acts in a manner that exceeds the bounds of reason under the circumstances. *Id.* "An abuse of discretion occurs when joinder of separate charges deprived the defendant of a fair trial." *Id.*

[¶31] Rule 8(a) of the Wyoming Rules of Criminal Procedure provides, *inter alia*, that multiple offenses may be charged in the same information if the offenses charged "are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan." W.R.Cr.P. 8(a). Joinder of offenses is proper absent compelling reasons for severance, because joint trials serve the public interest in expediting the administration of justice by reducing docket congestion, conserving the time of judges and juries, and avoiding the need to recall witnesses to provide identical or overlapping testimony. *Lessard*, ¶ 25, 158 P.3d at 704; *Bell v. State*, 994 P.2d 947, 955 (Wyo. 2000). The prejudice which may result from joining offenses in a single case must be weighed against the judicial economy obtained by joinder. *Id.*

[¶32] We have scoured the record, and we are convinced, as was the trial judge, that the offenses relating to Mr. Armajo and his girlfriend B.B. were inextricably intertwined and constituted parts of a common scheme or plan. While the Appellant shot and killed Mr. Armajo several blocks away from where he sexually assaulted B.B. roughly thirty minutes later, the circumstances surrounding the commission of these acts are related to such an extent, *see supra* ¶¶ 4-10, that we can only conclude that the offenses were properly joined under W.R.Cr.P. 8(a).

[¶33] Appellant also claims that Rule 14 of the Wyoming Rules of Criminal Procedure required the district court to order separate trials because he suffered prejudice from

joinder of the offenses.[9]  We employ a two-part analysis to determine whether joinder unfairly prejudiced a defendant:

> The first is whether the evidence relating to the similar offenses charged would be admissible in a separate trial of each offense. If the evidence would be admissible, there is no prejudice. If the evidence would not be admissible in separate trials, the trial court should then determine whether the evidence of each crime is simple and distinct. Stated differently, the second consideration is whether the evidence relating to the separate offenses would be so complicated that the jury could not reasonably be expected to separate them and evaluate the evidence properly and individually on each separate charge.

*Lessard*, ¶ 28, 158 P.3d at 705 (citations and quotation marks omitted).

[¶34] Appellant contends that the evidence concerning both victims would have been inadmissible in separate trials as irrelevant and improper character evidence under W.R.E. 404(b).  We disagree.  The evidence of each crime was plainly relevant to the other and would have shown motive, course of conduct or a common plan or scheme.  By way of example, Appellant hit B.B. in the head and threatened her while he sexually assaulted her with the same pistol he used to kill Mr. Armajo.  The gun would have been admitted as evidence in separate trials.  Furthermore, the shoeprint found on B.B's front door and the shoe inside her home had Mr. Armajo's blood on them and would have been relevant to the entire series of tragic events that night.  So would his statements to B.B. about killing Mr. Armajo and his threat that he could also kill her.  Finally, the alleged sexual assaults were at least arguably a continuation of the malice claimed by the State to have been directed at Mr. Armajo.

[¶35] Even if the district court might have ruled that some of the evidence was inadmissible in separate trials, the facts of this case, although horrifying, were fairly simple and straightforward.  Moreover, the district court instructed the jury to evaluate each charge separately in concise and understandable language.  The record contains nothing to suggest that the jury disregarded or failed to follow the instructions, or that it was unable for any reason to evaluate the evidence supporting the murder charge separately from that supporting the sexual assault and kidnapping charges.  Indeed, the jury acquitted Appellant on one of the sexual assault charges, which strongly suggests that it held the State to its burden of proof, evaluated the evidence relating to each charge

---

[9] Rule 14 states in pertinent part that "[i]f it appears that a defendant or the state is prejudiced by a joinder of offenses . . . in . . . an information . . . or by such joinder for trial together, the court may order an election or separate trials of counts . . . ."  W.R.Cr.P. 14.

11

separately, and ultimately found the proof wanting in that respect. The district court did not abuse its discretion in refusing to sever the murder charge from the charges concerning B.B.

[¶36] Affirmed.